**Damian L. BEARTUSK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 98–243.

Supreme Court of Wyoming.

May 10, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Diane Courselle, Director, Defender Aid Program; Matt Robinson, Student Intern; and Kyndra K. Miller, Student Intern. Argument by Ms. Miller.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sen-

ior Assistant Attorney General; Kimberly A. Baker, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; Martina D. Miller, Student Intern; and Clay Mahaffey, Student Intern. Argument by Ms. Miller and Mr. Mahaffey.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

Damian Beartusk appeals his conviction of sexual assault in the third degree. He argues that the jury selection process was unconstitutional, that the prosecutor tried the case during *voir dire*, that the State impermissibly commented upon his exercise of his constitutional right to remain silent, and that hearsay was improperly admitted at trial. Finding no reversible error, we affirm.

## ISSUES

Appellant challenges the fairness of his trial, presenting four issues for review:

I. The trial court denied Damian Beartusk's constitutional right to a fair jury trial by dismissing veniremen based on gender in violation of *Batson*, expanded to gender in *J.E.B.*

II. The prosecutor violated essential demands of fairness when she began typing the case during voir dire by referring to specific factors of the case, and preconditioning the jury to the State's theory of the case.

III. At trial, the prosecutor impermissibly commented on Damian Beartusk's silence, implying guilt in violation of his constitutional right to remain silent.

IV. The trial court erred when it allowed the State to admit testimony of seven witnesses to repeat what the alleged victim had told them. The statements were inadmissible as substantive evidence because, according to the defense, the victim had a motive to fabricate from the outset and all these statements were made after the victim changed her story. Furthermore, the statements did not fit under any hearsay exception, and therefore the court erred

when it allowed them to be admitted to prove the truth of the matter asserted.

The State responded, rephrasing the issues only slightly.

## FACTS

Evidence presented to the jury reveals that the victim was a troubled 15–year–old girl from California who, on October 2, 1997, arrived at the Thunder Child Treatment Center near Sheridan to receive extended inpatient treatment for addiction to methamphetamine and marijuana. During her first week at the center, the victim met the appellant, Damian Beartusk, who was a unit technician responsible for supervising adolescent patients. Beartusk knew the victim was just 15 years of age as he developed a friendly relationship with her, confiding that he was having marital difficulties.

On or about October 11, 1997, Beartusk awoke the victim at 3:00 a.m. and persuaded her to accompany him outside. After smoking marijuana in a parked car, they returned to the adolescent wing, where the victim returned to her room. After checking the other children, Beartusk proceeded to the victim's room, whereupon they had sexual intercourse.

A few days later, Beartusk told the victim that he could get into trouble if she told anyone about their tryst and instructed her to keep quiet. His instruction, however, was belated; she had already told her roommate. When officials from the Department of Family Services confronted the victim with the allegations, she initially denied them. Unable to follow his own instruction, Beartusk in the meantime boasted of his conquest to a coworker. When confronted again with the allegations, the victim changed her story and admitted to having sex with Beartusk. The victim was then interviewed by a series of officials, to whom she repeated her story. Beartusk was arrested on December 17, 1997.

On May 7, 1998, a Sheridan County jury found Beartusk guilty of third degree sexual assault. Wyo. Stat. Ann. § 6–2–304(a)(i) (Lexis 1999). He was sentenced to a term of three to six years imprisonment and ordered

to pay $4,681.33 in court costs. This appeal timely followed.

## DISCUSSION

### I. Jury Selection

Appellant argues that his constitutional right to a fair jury trial was denied when the prosecutor exercised eight peremptory challenges against men and only one against a woman. This issue was preserved when defense counsel objected that the State violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*Batson* established that the Equal Protection Clause forbids prosecutors from exercising peremptory challenges to strike prospective jurors because of their race. In *Batson*, the U.S. Supreme Court held that although a defendant has no right to a petit jury composed in whole or in part of persons of his own race, the State may not purposefully exclude members of the defendant's race solely because of race. The *Batson* doctrine was extended from racial discrimination to include gender discrimination by *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

■ A prosecutor is free to exercise peremptory challenges until the defendant objects on the ground that the prosecutor has engaged in intentional discrimination on the basis of race or gender. When challenging the jury selection process, the burden is on the defendant to prove the existence of purposeful racial discrimination.

[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury [by showing first] that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the

veniremen from the petit jury on account of their race. This combination of factors ... raises the necessary inference of purposeful discrimination.

*Bueno–Hernandez v. State*, 724 P.2d 1132, 1134 (Wyo.1986) (quoting *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723); *see also Espinoza v. State*, 969 P.2d 542, 547 (Wyo.1998). If the court finds that the defendant has made a prima facie showing of discrimination, the burden then shifts to the prosecutor to present a neutral explanation for the strike. If the court discredits that explanation, or if the defendant can show the neutral explanation to be pretextual, then a *Batson* violation has occurred.

■ In the case at bar, the State exercised seven of its peremptory challenges against men and exercised its challenge to the alternate juror against a man. Also, the prosecutor apparently struck a female juror with a gender-ambiguous first name, mistakenly believing the female venireman to be a man; the prosecutor did not tender a gender-neutral explanation for the strike of the female juror. Defense counsel objected, asserting that the State had struck eight men and one woman. On appeal, the State concedes that defense counsel met his initial burden in raising the specter of a potential *Batson* violation and making a prima facie showing of an equal protection violation by showing that the prosecutor exercised her peremptories to remove men from the jury.

The trial court then gave the prosecutor an opportunity to explain her strikes. The prosecutor disclaimed any intention to strike men and proffered the following gender-neutral reasons for five challenges against male veniremen: one juror had impaired hearing; a second was the father of a criminal defendant; a third "didn't seem interested in being a juror"; a fourth was not paying attention to the prosecutor's questions; and a fifth had prior involvement with law enforcement concerning a domestic battery investigation.

The prosecutor offered no explanation for the other three challenges to men, and neither the court nor defense counsel requested further explanation. The court ruled that "[b]ased on that explanation from the State,

the Court does not find that the State has purposefully excluded males without cause. So, the Court accepts the selection previously noted." No further objection was raised to the composition of the jury.

■■■ Inability to hear testimony and bias against law enforcement are reasonable bases for exercising peremptories. Indeed, the failure of a juror to hear testimony, coupled with a showing of prejudice, could itself form the basis for reversal. *See Belondon v. City of Casper,* 456 P.2d 238, 242 (Wyo.1969). Reasons three and four, lack of interest and failure to pay attention, are subjective explanations that do not readily reveal themselves upon reviewing a cold appellate record. Purely subjective impressions of a juror's qualities alone without objective support cannot suffice; such rationales could too easily be used to mask discrimination. *See, e.g., State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249, 1253 (1993). Juror inattention could reflect some defect in advocacy skills rather than in a venireman's jury potential.

■ Be that as it may, these are questions best left to the discretion of the trial judge, who can gauge the venire's demeanor and more reliably determine whether a juror is actually inattentive or whether a lawyer is manufacturing pretextual excuses to conceal discrimination. The trial judge has wide discretion in ruling upon the qualification of jurors, and his determination is not subject to review except upon a clear showing of abuse of such discretion. *Belondon,* 456 P.2d at 242. On appeal, a trial court's findings of fact after a *Batson* hearing on whether the State's strikes were taken for discriminatory reasons will be reversed only if clearly erroneous. *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991); *U.S. v. Johnson,* 941 F.2d 1102, 1108–09 (10th Cir.1991). When the trial judge accepted the explanations offered by the prosecution, he ratified the reasonability of those proffered explanations. We will not second guess the trial court's findings of fact in a *Batson* ruling absent clear error.

■ Appellant next argues that the prosecution's failure to provide any reasons for three other male peremptories violates *Bat-*

*son.* The State responds that no explanation was offered because the trial court was satisfied with the explanations for the other strikes and found that no purposeful discriminatory action had taken place. "Because the right to nondiscriminatory jury selection procedures belongs to the potential jurors, as well as to the litigants . . . [t]he exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system." *J.E.B.,* 511 U.S. at 142 n. 13, 114 S.Ct. at 1428 n. 13. For us to review the trial court's findings, there must be some indication in the record revealing the basis for his decision. After hearing the State's explanations, the trial court noted that the prosecutor had joined defense counsel in challenging two women for cause and found that the State did not purposefully discriminate against male veniremen.

In formulating the clear error standard of review for *Batson* hearings, the U.S. Supreme Court noted that the finding of discriminatory intent will often hinge on judicial assessment of an attorney's demeanor:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1869.

In this case, the trial judge properly required the prosecutor to explain her jury selection strategy. While we would prefer that judges conducting *Batson* hearings require counsel to justify all their suspect strikes on the record, we will not find that the trial judge's findings of fact here were clearly erroneous.

## II. Voir Dire

■ Appellant contends that the prosecutor improperly argued her case to the

jury during voir dire. Specifically, appellant complains that the prosecutor queried the venire whether a young girl undergoing drug treatment might be more vulnerable, more accessible to the defendant, or more deserving of protection. The prosecutor characterized the victim as "easier prey." After an objection was lodged, the court admonished the prosecutor to avoid discussing particular facts of the case. Despite this admonishment, the prosecutor later asked the venire if they could "understand the reasons why a 15–year–old child might deny that she had had sexual intercourse with a married adult."

 Counsel are prohibited from trying a case during voir dire. *Jahnke v. State*, 682 P.2d 991, 1000 (Wyo.1984). Counsel may not "attempt to precondition prospective jurors to a particular result ... nor question jurors concerning the pleadings, the law, the meaning of words, or the comfort of the jurors." W.R.Cr.P. 24(c)(2). Moreover, counsel may not "[i]nstruct the jury on the law or argue the case." W.R.Cr.P. 24(c)(3)(D). The latitude allowed counsel during voir dire is within the sound discretion of the trial court. *Gerard v. State*, 511 P.2d 99, 100 (Wyo.1973), *cert. denied* 414 U.S. 1072, 94 S.Ct. 585, 38 L.Ed.2d 478 (1973). On appellate review of voir dire, deference is given to the trial court's judgment under the abuse of discretion standard. *Summers v. State*, 725 P.2d 1033, 1041 (Wyo. 1986), *aff'd* 731 P.2d 558 (Wyo.1987); *Miller v. State*, 904 P.2d 344, 352 (Wyo.1995).

Defense counsel properly objected to the initial comments made by the prosecutor, and the trial court properly sustained the objection, along with an appropriate admonition directed at the prosecutor. As for the prosecutor's subsequent question concerning why a victim might deny the sexual abuse, there is a fine line between arguing the facts of a case and exploring possible prejudices among the venire. We find the trial court did not abuse its discretion in giving counsel some latitude during voir dire.

### III. Constitutional Right to Silence

 Appellant contends that the State improperly commented on Beartusk's silence in violation of *Tortolito v. State*, 901 P.2d 387 (Wyo.1995). The alleged violations occurred during direct examination of a police investigator who testified that he interviewed the defendant, that the defendant answered some innocuous questions, and that when the interview became accusatory, Beartusk terminated the interview: "He didn't want to answer any more questions." Also, the investigator testified that Beartusk called him and said he would come into the sheriff's office when he got back into town, but that Beartusk never came in and "never contacted" the police after that time.

 Any comment upon an accused's invocation of his constitutional right to remain silent is prejudicial error per se entitling the accused to an automatic reversal of the conviction. *Tortolito*, 901 P.2d at 390–91. The question then is whether there was such a comment in this case. "A comment upon an accused's silence occurs when used to the state's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *Id.* at 391. "Merely observing that the defendants had not said much is not comment." *Parkhurst v. State*, 628 P.2d 1369, 1382 (Wyo. 1981). In deciding whether there was an impermissible comment upon the defendant's exercise of his right of silence, we will not take sentences and phrases out of context. *Cheatham v. State*, 719 P.2d 612, 621 (Wyo. 1986).

Considering their entire context, the two statements singled out here are relatively benign and do not rise to the level of commentary upon silence. Neither statement by itself constitutes commentary on the invocation of the right to remain silent. The prosecutor did not ask improper questions, did not emphasize the two statements, did not follow up on them, did not refer to them during closing arguments, and did not attempt to exploit them in any way. We find no error.

### IV. Hearsay

Finally, appellant complains that he was convicted on the testimony of one witness, the victim, whose story was repeated numerous times at trial. Several Thunder Child Treatment Center employees, the victim's

roommate, two police officers, and a nurse were all permitted to testify to what the victim told them about the crime. These hearsay statements were admitted without objection.

Since defense counsel chose not to object at trial, we review the admissibility of these hearsay statements under the plain error standard. For an error to rise to plain error, three requirements must be met: the record must clearly describe the facts alleged as error; the error must violate a clear and unequivocal rule of law; and the error must affect a substantial right resulting in material prejudice. *Mitchell v. State*, 982 P.2d 717, 723–24 (Wyo.1999). Appellant urges that plain error exists due to the sheer volume of hearsay testimony admitted. However, before we look at prejudice, we must first analyze whether a clear and unequivocal rule of law has been violated.

This court recently summarized the state of the law regarding prior consistent hearsay statements in *Dike v. State*, 990 P.2d 1012, 1024 (Wyo.1999). In that divided opinion, this court declined to adopt the United States Supreme Court's interpretation of Rule 801(d)(1)(B). In the federal system, the admissibility of prior consistent hearsay statements depends on a premotive temporal requirement, that is, the prior consistent statements must precede the motive to fabricate in order to rebut a charge of recent fabrication. *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). Wyoming does not have such a rigid requirement and will sometimes allow statements failing the temporal test to be admitted for rehabilitative purposes. In these cases, the party seeking exclusion of the hearsay is entitled to a limiting instruction.

In the case at bar, defense counsel neither objected to the hearsay nor sought a limiting instruction. Instead, he chose to make the best of the situation by arguing to the jury that the repetition of the same story merely illustrates the weakness of the prosecution's case. We cannot find plain error under these circumstances because the alleged error does not violate a clear and unequivocal rule of law; under *Dike*, such hearsay may enjoy some limited admissibility. There was no plain error.

Affirmed.