FOX, Justice.
[¶1] Brandon D. Roberts appeals his conviction for driving while under the influence (DWUI). Mr. Roberts claims that the district court denied him equal protection by allowing the State to peremptorily challenge a potential juror based on race. Because the record supports the validity of only one of the prosecutor's race-neutral reasons for his peremptory challenge, and does not show that the district court would credit this reason alone, we remand for a new Batson hearing.
*434 ISSUE
[¶2] Did the district court clearly err by allowing the State to exercise a peremptory challenge to exclude an African American from the jury?
FACTS
[¶3] Mr. Roberts, an African American, was arrested in Cheyenne, Wyoming, and charged with DWUI under Wyo. Stat. Ann. § 31-5-233(b)(i). After a 11//2-day trial, the jury returned a guilty verdict. The DWUI conviction was his fourth in less than ten years, constituting a felony for which the district court sentenced him to three to five years incarceration.[1]
[¶4] Our inquiry is limited to the jury selection process, during which the State exercised a peremptory challenge to dismiss from the panel Juror 364, an African American woman.[2] Of 31 prospective jurors on the panel, 2 were African American. The prosecutor exercised his second peremptory challenge to remove the first African American, to which there was no objection. The prosecutor then exercised his fourth peremptory challenge to reject the second African American, Juror 364, to which defense counsel objected, prompting the district court to hold a side-bar conference:
[DEFENSE]: I do have concerns with the State's most recent strike as she is the last remaining person of African American descent. I understand why the first lady was struck of African American decent [sic], why she was selected by the prosecutor to be struck, but the second one I fail to see how that is based ...
THE COURT: [Prosecutor].
[PROSECUTOR]: Her demeanor throughout was negative. She doesn't want to sit on the jury. One time she did answer, she expressed doubt as to whether this was alcohol-or a DUI. Her expressions seemed to-her facial expressions were more-she was kind of nodding. She was grimacing. My recollection is that she did not want to sit on the jury.
THE COURT: [Defense counsel].
[DEFENSE]: Those words were not spoken by her.
THE COURT: What response are you expecting from the Court?
[DEFENSE]: Just that it be done for the record.
THE COURT: I will allow the State-is it Number 346 [sic]-seat number is it-17, [Juror 364].
[DEFENSE]: Thank you, Your Honor.
Defense counsel was correct that Juror 364 had not spoken the words attributed to her by the prosecutor. In fact, we can find no record of Juror 364 speaking during voir dire.
[¶5] Following jury selection, the jury was sworn in, the unselected venirepersons were released, and each party presented opening statements. Before the State presented evidence, while the jury was out of the courtroom, *435 defense counsel requested that "the prosecutor's and my jury selection notes be submitted to the Court and sealed, not seen by other parties to preserve the issue of the Batson challenge I raised regarding [Juror 364] as a best practice method of preserving the record." The State objected, claiming that the notes were protected work product. The district court took the request under advisement, but there is no record that it ever ruled on the request. The attorney notes are not in the record.
[¶6] The State then presented its case in chief. After the State rested, the district court, on its own motion, announced to counsel that it would conduct a full hearing on the Batson challenge:
I do think it's important for the defendant's benefit, if for no other reason, and so that we've created a full record, we conduct a full Batson analysis-or I conduct a full Batson analysis .... And if the defendant were to make a prima facie showing, the State would have to provide I think in a little bit more detail than has been done to date a neutral explanation for the exercise of the peremptory challenges so that I can make the decision that I need to make.
The district court immediately proceeded with a second Batson hearing:
[DEFENSE]: Your Honor, on this entire panel there were two members of what it appeared to be African American decent [sic]. Mr. Roberts is African American himself. The first lady who was challenged, peremptorily challenged by the State was ...
THE COURT: [Other juror].
[DEFENSE]: Thank you, Your Honor. When [the other juror] did speak she spoke that she knew Mr. Roberts from growing up with him. She also gave a lot of vocal answers for the State to base their peremptory strike on her.
The issue I have is with the juror who was seated in Seat 17, Juror Number 364 .... She was the only other juror who appears to be of African American decent [sic], and she was the second person-it was the State's fourth peremptory strike and [the other juror] was the second. Then she was the only-the State struck two of the only two African American people who were on as a potential juror.
[Juror 364] in her vocalization response to questions seemed to only vocalize the question, "What is buzzed driving?" That doesn't seem that that can indicate that that in and of itself is-she did not vocalize anything that seemed to indicate that her being struck is based on anything other than her race.
....
THE COURT: Thank you, [Defense counsel]. [Prosecutor].
[PROSECUTOR]: The neutral reasons that the State would rely upon as laid forth earlier at the bench conference would be that the demeanor of the second juror struck, [Juror 364], throughout the case she was crumpling her face, she continued to wear a hat throughout the proceedings, Your Honor, when clearly outside the courtroom it says no hats.
[¶7] At this point, the district court explained that it had allowed Juror 364 to wear a hat during jury selection due to a dermatological condition. The prosecutor replied:
[PROSECUTOR]: Certainly my only joinder to that, and I thank you for putting it on the record, was counsel was not informed of that so I had no idea of that. In any event, looking at that in addition to the one prominent question that defense counsel always put out is that she wanted to make clear that this was not a controlled substance versus alcohol DUI. It's that fine line drawing that concerned the State going, well, if she can draw this fine line and say, yeah, I want some more proof, that sends a red flag to the State. She might be uncomfortable with the bright line of a .08 as the state law in Wyoming.
It's for those neutral reasons, Your Honor, that the State struck [Juror 364].
And to further supplement the record when it comes to her demeanor, I noticed her arms were crossed, that she was shifting, that she-except for that one question, she was really silent. And I did notice, though, when talking about the law enforcement question that she did make a *436 crumpled face at that time as well when I was talking about, "How do people feel about law enforcement?" And there were some expressions of distrust of law enforcement. Those would be the neutral reasons the State would offer.
[¶8] The district court overruled the Batson challenge, providing the following analysis:
I accept [the prosecutor's] explanation for the exercise of that particular peremptory challenge. I think it's completely understandable that the State would have concern based on [Juror 364's] expression of her own concerns, reservations about what she would refer to as a "bright line."
In addition to that I couldn't see [Juror 364]. She was in the second row and she's not the tallest of individuals and so I could not see her face very much of the time. I did not notice the facial expressions that [the prosecutor] would describe, but I will accept as accurate and credible [the prosecutor's] assessment of [Juror 364] that he was concerned about her demeanor and also concerned about her expression of-her reservations and concerns, as I said, about the law, the law being that bright line. And I do believe as a result of that the State properly exercised a peremptory challenge on [Juror 364] for neutral reasons and that the use of that particular peremptory challenge was not pretextual.
[¶9] The transcript reveals, and the State concedes, that Juror 364 never expressed that she "want[ed] some more proof"-the assertion that allegedly caused the prosecutor to believe she might be uncomfortable with the "bright line" of the DWUI law. Nor had she asked the question, "What is buzzed driving?," as reported by defense counsel. Juror 364 never spoke at all.
DISCUSSION
[¶10] The peremptory challenge-that is, a party's removal of a potential juror without showing cause-lies at the heart of jury selection in the American trial. With roots in English common law, the "persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." Swain v. Alabama , 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), overruled on other grounds by Batson v. Kentucky , 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case" are free from bias. Id. Thus, although not guaranteed by the constitution, the peremptory challenge is regarded as "one of the most important of the rights secured to the accused." Id. (internal citations omitted). In a Wyoming criminal trial, the right of both State and the defendant to exercise peremptory challenges is assured by statute. Wyo. Stat. Ann. § 7-11-103 (LexisNexis 2017).
[¶11] "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." Swain , 380 U.S. at 220, 85 S.Ct. at 836. "[A]s Blackstone says, [the peremptory challenge is] an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose." Id. at 219, 85 S.Ct. at 835. We have acknowledged that "[t]raditionally, peremptory challenges could be exercised for any reason or for no reason, ... [and] often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.' " Mattern v. State , 2007 WY 24, ¶ 6, 151 P.3d 1116, 1121 (Wyo. 2007) (internal citations omitted).
[¶12] There is, however, a constitutional limit to the unrestrained exercise of peremptory challenges. The Equal Protection Clause of the United States Constitution "forbids the prosecutor to challenge potential jurors solely on account of their race ...."[3]
*437 Batson , 476 U.S. at 89, 106 S.Ct. at 1719 ; Id. at 84, 106 S.Ct. at 1716 (citing Swain , 380 U.S. at 203-04, 85 S.Ct. at 826 ). Selecting a jury by discriminatory criteria violates the constitutional right of not only the defendant but also the potential juror, as it excludes the juror from participating in our system of justice. Id. at 87, 106 S.Ct. at 1718. Accordingly, the "Constitution forbids striking even a single prospective juror for a discriminatory purpose." Foster v. Chatman , --- U.S. ----, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016) (quoting Snyder v. Louisiana , 552 U.S. 472, 478, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008) ).
[¶13] As a practical matter, applying constitutional scrutiny to the process of peremptory challenges-which by nature is predicated on the ability of the challenging attorney to strike panel members for reasons that are often unexplainable, and perhaps unknowable-has proven to be difficult. See , e.g. , Miller-El v. Dretke , 545 U.S. 231, 238, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005). In Batson , however, the Supreme Court declared that the "privilege of unfettered exercise of the [peremptory] challenge" must yield to the "mandate of equal protection." 476 U.S. at 98-99, 106 S.Ct. at 1724. With this in mind, the Court set out the three-step process a trial court shall use to determine whether a peremptory challenge has been exercised with discriminatory purpose:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez v. New York , 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (citing Batson , 476 U.S. at 96-98, 106 S.Ct. at 1721-24 ) (internal citations omitted). Upon review of a district court's Batson analysis, we will overturn its finding on the issue of discriminatory intent only if its determination was clearly erroneous. Mattern , 2007 WY 24, ¶ 9, 151 P.3d at 1122 (citing Hernandez , 500 U.S. at 369, 111 S.Ct. at 1871 ).
Defendant's prima facie showing
[¶14] "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez , 500 U.S. at 359, 111 S.Ct. at 1866. Here, when defense counsel objected to the State's strike of Juror 364, the district court prompted the prosecutor to explain his peremptory challenge. The prosecutor offered his race-neutral justifications, and the district court overruled the objection. We therefore move directly to the second step.[4]
Prosecutor's race-neutral explanation
[¶15] To satisfy the second step of the Batson analysis, the prosecutor simply must provide "an explanation based on something other than the race of the juror." Hernandez , 500 U.S. at 360, 111 S.Ct. at 1866. The explanation "need not be persuasive, or even plausible. ... [A]ll that is required is an explanation that is facially valid." Mattern , 2007 WY 24, ¶ 9, 151 P.3d at 1122 (citing Purkett v. Elem , 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam)). A venireperson's demeanor is one such valid, race-neutral explanation for exercising a peremptory strike. Snyder , 552 U.S. at 477, 128 S.Ct. at 1208. A prosecutor may validly strike a venireperson who appears to *438 be disinterested in serving on the jury. Beartusk v. State , 6 P.3d 138, 142 (Wyo. 2000).
[¶16] Here, the State had two opportunities to provide a race-neutral reasons for the challenge. When defense counsel objected, the prosecutor offered two bases for the strike: Juror 364 "expressed doubt as to whether this was alcohol-or a DUI" and she displayed a negative demeanor, evidenced by her facial expressions, such as nodding and grimacing, which led the prosecutor to believe that she did not want to sit on the jury. At the second "full" Batson hearing, the prosecutor added that Juror 364 was: "crumpling" her face, wearing a hat in the courtroom, stating that she "want[ed] more proof" of a DWUI thus indicating that "[s]he might be uncomfortable with the bright line of a .08 as the state law in Wyoming," crossing her arms, "shifting," being "really silent," and expressing "distrust of law enforcement." Each of the prosecutor's justifications offered throughout the two hearings was unrelated to Juror 364's race. Therefore, the prosecutor met his burden to offer a race-neutral explanation for striking Juror 364 from the venire.
District court's determination of purposeful discrimination
[¶17] Although it is couched in a burden-shifting framework, the essence of the Batson analysis is the third step, when the court determines if the defendant can overcome the prosecutor's race-neutral reasons for exercising the strike. See Batson , 476 U.S. at 93, 106 S.Ct. at 1721 (although the burden of production may shift, the ultimate burden of persuasion always stays with the defendant). In making its determination,
"[a] court ... must keep in mind the fundamental principle that ... [p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."
Hernandez , 500 U.S. at 359-60, 111 S.Ct. at 1866 (internal citations omitted).
[¶18] A trial court's determination of discriminatory intent "largely will turn on evaluation of credibility." Hernandez , 500 U.S. at 365, 111 S.Ct. at 1869 (quoting Batson , 476 U.S. at 98, n.21, 106 S.Ct. at 1724, n.21 ). Some evidence of credibility may appear in the transcript. For example, "[c]redibility can be measured by, among other factors, ... how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." Miller-El v. Cockrell , 537 U.S. 322, 339, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). Additionally, "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination ...." Dretke , 545 U.S. at 241, 125 S.Ct. at 2325.
[¶19] "The best evidence [of credibility] often will be the demeanor of the attorney who exercises the challenge." Beartusk , 6 P.3d at 143 (citing Hernandez , 500 U.S. at 365, 111 S.Ct. at 1869 ). An evaluation of the prosecutor's state of mind lies "peculiarly within a trial judge's province." Id. For this reason, where a trial court finds that an attorney credibly relied on the demeanor of a venireperson to justify his strike, its evaluation must be given great deference and will be disturbed only upon a finding of clear error. Snyder , 552 U.S. at 477, 479, 128 S.Ct. at 1207, 1209.
[¶20] Here, we begin by setting out the district court's stated reasons for concluding that the peremptory challenge of Juror 364 was not motivated by race. First, the district court found that the prosecutor was concerned about "[Juror 364]'s expression of her own concerns, reservations about what she would refer to as a 'bright line.' " Second, although the district court did not notice Juror 364's facial expressions, it "accept[ed] as accurate and credible [the prosecutor's] assessment of [Juror 364] that he was concerned about her demeanor" and-again-"[Juror 364's] expression of ... the law being that bright line."
*439 [¶21] The district court's acceptance of the prosecutor's proffered reason-that Juror 364 made an "expression of her own concerns, reservations about what she would refer to as a 'bright line' " (emphasis added)-is not supported by the record, which does not indicate that Juror 364 either expressed or referred to anything. As the State concedes, the exchange during voir dire that sustained the prosecutor's assertion that Juror 364 "might be uncomfortable with the bright line of a .08 as the state law in Wyoming," did not take place with Juror 364.[5] Despite the prosecutor's assertions to the contrary, the record does not indicate that Juror 364 "expressed doubt as to whether this was alcohol-or a DUI" or that she would "want some more proof" to find a defendant guilty of DWUI. On the record before us, Juror 364 never spoke during voir dire. We are unwilling to speculate about whether a more accurate record might have supported the prosecutor's explanation, especially when the parties have neither raised that argument, nor sought correction of the record pursuant to W.R.A.P. 3.04. That would be a finding of fact for the district court to make on remand.
[¶22] When a prosecutor's "stated reason does not hold up," it has "pretextual significance." Dretke , 545 U.S. at 252, 125 S.Ct. at 2332 ; see also Snyder , 552 U.S. at 485, 128 S.Ct. at 1212. In other words, "implausible ... justifications may (and probably will) be found to be pretexts for purposeful discrimination." Purkett , 514 U.S. at 768, 115 S.Ct. at 1771 ; see also Beartusk , 6 P.3d at 142 ("If the court discredits [the] explanation, or if the defendant can show the neutral explanation to be pretextual, then a Batson violation has occurred."). As to the plausibility of a prosecutor's justification of a peremptory strike, "[t]here will seldom be much evidence bearing on that issue ...." Hernandez , 500 U.S. at 365, 111 S.Ct. at 1869. Here, however, we have evidence bearing on the issue: the record shows that Juror 364 did not speak during voir dire. The prosecutor's assertion that she did is incorrect and therefore has pretextual significance, which the district court overlooked because it accepted the statement as true.
[¶23] The district court also credited the prosecutor's description of Juror 364's demeanor to justify the State's peremptory strike. A prosecutor's demeanor-based explanation for a peremptory challenge need not be corroborated by a trial judge's own observations of the challenged venireperson. Thaler v. Haynes , 559 U.S. 43, 47, 130 S.Ct. 1171, 1174, 175 L.Ed.2d 1003 (2010). "[I]n the absence of a personal recollection of the juror's demeanor, the judge [may accept] the prosecutor's explanation." Id. at 49, 130 S.Ct. at 1175. When a prosecutor offers his perception of a venireperson's demeanor to explain his strike, "[p]urely subjective impressions of a juror's qualities alone without objective support cannot suffice; such rationales could too easily be used to mask discrimination." Beartusk , 6 P.3d at 143.
[¶24] Here, the prosecutor offered more than "purely subjective impressions." Beartusk , 6 P.3d at 143. The prosecutor described Juror 364's facial expressions, such as nodding and grimacing, "crumpl[ing]" her face, crossing her arms, and "shifting." The district court did not observe Juror 364's facial expressions and body language. Instead, the district court found the prosecutor to be credible and therefore trusted his observations. The district court's reliance on the prosecutor's credibility-if viewed in isolation-was not improper.
[¶25] We must consider, however, whether it was clearly erroneous for the district court to rest its determination on both valid and invalid grounds. When faced with this circumstance, some courts require the prosecution to prove that "the same strike would have been made even absent the impermissible motivation" while others find a Batson violation whenever a strike was "motivated in substantial part" by discriminatory intent.
*440 6 Wayne R. LaFave et al., Criminal Procedure § 22.3(d) (4th ed. database updated December 2017) (internal citations omitted). We find it unnecessary to delve into these distinctions or to adopt a blanket rule. Instead, we find that the specific facts of this case are similar to Snyder , where the prosecutor offered two race-neutral reasons for striking an African American venireperson: the potential juror (1) looked nervous, and (2) might find the defendant guilty of a lesser crime in order to avoid the extended penalty phase of a first-degree murder conviction. 552 U.S. at 478, 482, 128 S.Ct. at 1208, 1210. The Supreme Court determined that the second explanation was invalid because white jurors who expressed similar attitudes were not likewise challenged. This left the prospective juror's nervous demeanor as the only valid basis for the strike. Id. at 484-85, 128 S.Ct. at 1212.
[¶26] In Snyder , the trial court allowed the strike without stating its reasoning, and thus "the record [did] not show that the trial judge actually made a determination concerning [the prospective juror's] demeanor." 552 U.S. at 479, 128 S.Ct. at 1209. The Supreme Court found clear error, id. at 474, 128 S.Ct. at 1206, and, while limiting its conclusions to the particular circumstances of the case, explained that:
a peremptory strike shown to have been motivated in substantial part by discriminatory intent could not be sustained based on any lesser showing by the prosecution. And in light of the circumstances here-including absence of anything in the record showing that the trial judge credited the claim that [the challenged venireperson] was nervous, the prosecution's description of both of its proffered explanations as "main concern[s]," and the adverse inference noted above-the record does not show that the prosecution would have pre-emptively challenged [the venireperson ] based on his nervousness alone .
Id. at 485, 128 S.Ct. at 1212 (emphasis added).
[¶27] This case presents a variation of Snyder . The record shows that Juror 364's demeanor figured into the district court's ruling. Specifically, the district court determined the prosecutor to be credible and, therefore, the court accepted the prosecutor's assertion that Juror 364 conveyed a negative demeanor. However, as in Snyder , the record does not show that the prosecution would have peremptorily challenged Juror 364 "based on her demeanor alone." See Snyder , 552 U.S. at 485, 128 S.Ct. at 1212. Nor does the record indicate that the district court would have grounded its decision solely in the demeanor-based explanation. Initially, the prosecutor offered Juror 364's negative demeanor as one explanation for his strike. But, when the district court announced the second hearing, it informed the prosecutor that it still needed more: "the State would have to provide I think in a little bit more detail than has been done to date a neutral explanation for the exercise of the peremptory challenges so that I can make the decision that I need to make."[6] The prosecutor offered additional details, including more descriptions of facial expressions and body language; the explanation that some of those expressions were made when the prosecutor was talking about law enforcement; the observation that she wore a hat in the courtroom; and the assertion that Juror 364 said she would "want some more proof" of a DWUI, which led him to believe that she "might be uncomfortable with the bright line of a .08 as the state law in Wyoming." The district court stated that it would "accept as accurate and credible [the prosecutor's]
*441 assessment of [Juror 364] that he was concerned about her demeanor and also concerned about her expression of-her reservations and concerns, as I said, about the law, the law being that bright line." The new detail that the court appeared to rely on to credit the demeanor-based explanation was the incorrect description of Juror 364's reservations about the "bright line" rule. The record does not show that the district court considered the prosecutor's assessment of Juror 364's demeanor separately from his false assertion that Juror 364 made statements that conveyed a concern with the "bright line" of the law.
[¶28] Additionally, the prosecutor's false assertion casts a shadow on his credibility, which solely sustained the only valid reason for the strike. Misattributing statements to the same African American venireperson whose removal he sought to justify calls into question the reliability of the prosecutor's portrayal of that venireperson's demeanor. It compels us to ask whether the district court would have found the prosecutor credible if it had known that he ascribed unfavorable statements to Juror 364 that she had not made.[7]
[¶29] Like in Snyder , one of the prosecutor's two explanations for the peremptory challenge upon which the district court relied fails and we cannot ignore its pretextual significance. The prosecutor's strike was motivated at least in substantial part by the invalid reason and the record does not show that the district court would find that the prosecutor was motivated solely by the valid, demeanor-based grounds. The Supreme Court found that the trial court committed clear error under analogous facts in Snyder , and we likewise find clear error here. Snyder , 552 U.S. at 474, 128 S.Ct. at 1206.
Remedy
[¶30] This Court has reviewed a Batson challenge only a handful of times. Until today, we have not found a district court's determination of a Batson challenge to be clearly erroneous-and thus we have not had the occasion to consider the proper remedy for the transgression.[8] In Batson , upon finding error, the Court did not vacate the conviction but, rather, remanded the case for further proceedings with this directive: "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." 476 U.S. at 100, 106 S.Ct. at 1725. Throughout the country, "unless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due perhaps to the passage of time or the unavailability of the trial judge," appellate courts generally order a "limited remand" for a new Batson hearing when a trial court's analysis falls short. LaFave, supra , § 22.3(d) (citations omitted). Indeed, in Snyder , the Court vacated the conviction only due to the passage of time: "there [is not] any realistic possibility that this subtle question of causation could be profitably explored further on remand at this late date, more than a decade after petitioner's trial." 552 U.S. at 486, 128 S.Ct. at 1212.
[¶31] Here, we face no such obstacle. The validity of the State's peremptory strike of Juror 364 is grounded solely in the credibility of the prosecutor, and "[t]he trial judge is best placed to consider the factors that underlie credibility." Rice v. Collins , 546 U.S. 333, 343, 126 S.Ct. 969, 977, 163 L.Ed.2d 824 (2006) (Breyer, J., concurring). Accordingly, *442 we remand this case for a new Batson hearing in which the district court must reassess the prosecutor's credibility in light of the discrepancy between the record and his explanation. If the prosecutor maintains that he would have struck Juror 364 solely because of her demeanor, the district court may determine whether the prosecutor's credibility allows the peremptory challenge to rest solely on demeanor-based grounds. In the absence of a credible explanation, the district court must vacate Mr. Roberts' conviction.
KAUTZ, J., dissenting, in which HILL, J., retired, joins.
[¶32] I respectfully dissent from the majority opinion. Relying on the United States Supreme Court's opinion in Snyder v. Louisiana , 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), the majority concludes that because the district court relied on an "invalid" basis in conjunction with a valid reason in allowing the State's challenge to Juror 364, this case must be remanded for further Batson proceedings. This case, however, presents facts and circumstances that make it readily distinguishable from the court's discussion in Snyder .
[¶33] In Snyder , the prosecution presented two grounds for using a peremptory challenge to dismiss an African-American juror: (1) nervous demeanor, and (2) fear that the juror would vote for a lesser charge to avoid a penalty phase trial due to a student teaching obligation. Id. at 478, 128 S.Ct. 1203, 1208. The trial court allowed the challenge without any explanation of which basis it was relying on. Id . at 479, 128 S.Ct. 1203, 1208. The Supreme Court explained that nervousness is an appropriate race neutral reason to peremptorily challenge a juror, and deference to a trial court's decision on this fact is "especially appropriate" considering nervousness cannot be shown in a cold record. Id . at 479, 128 S.Ct. 1203, 1208. However, the Court found the student teaching obligation explanation did not hold up as racially neutral because the prosecutor did not use peremptory challenges on similarly situated white jurors. Id. at 483-84, 128 S.Ct. 1203, 1208. Because the trial court did not explain which basis it was relying on when it allowed the challenge, the Court was unwilling to assume the trial court's decision was based on the race neutral reason, or that the prosecutor would have challenged the juror based on solely the nervousness.
[¶34] Like Snyder , the prosecutor here gave two reasons for challenging Juror 364: 1) her demeanor; and 2) she appeared to be drawing distinctions between driving while under the influence charges based on alcohol versus a controlled substance. The majority accepts the juror's demeanor as a valid race neutral reason for the prosecutor's challenge. However, the majority concludes, without any citation to authority, the juror's statement is not a valid race neutral reason because the voir dire transcripts do not reflect that Juror 364 made any statements at all during the voir dire proceedings. While the majority is correct that the transcript does not attribute the statements relied upon by the prosecutor and the district court specifically to Juror 364, under the facts and circumstances of this case, I do not believe the transcript clearly indicates that Juror 364 did not make these statements. Furthermore, the record does not support an inference of a racial motivation on the part of the prosecutor.
[¶35] In Snyder , the Court did not rely on speculation in assigning a racial motivation to the prosecutor's actions and, instead, pointed to specific instances where the prosecutor treated white jurors who were similarly situated to the black juror differently. Here, the majority's determination of racial motivation does not stem from a comparison of the prosecutor's decisions concerning white and black jurors. Rather, the majority questions the prosecutor's credibility in its entirety based on what the majority concludes is a "false assertion" regarding Juror 364. While the transcript does not attribute any statements during voir dire to Juror 364, the transcript contains several red flags that lead me to question whether the transcription is an accurate representation of what occurred during voir dire . Voir dire was very short in this case, consuming less than forty pages of the trial transcript. When the court held the Batson hearing after the State rested its case, the court had enough recollection of the *443 voir dire proceedings that it recalled where Juror 364 was sitting, that she was not tall, and the court could not see the juror's face most of the time. Based on this, it is curious that the court would then rely on statements the prosecutor claimed this juror said if this juror was, in fact, silent during the entire voir dire process. This is bolstered by the fact that both the prosecutor and defense attorney discussed statements made by Juror 364 during voir dire . The prosecutor indicated he was striking this juror, in part, because the juror questioned the difference between alcohol DUI and impairment from other controlled substances. Defense counsel thought this juror asked, "what is buzzed driving?"
[¶36] The transcript shows that the prosecutor asked potential jurors if "anybody else like [sic] to share on that question, whether or not we should have [a] fuzzy determination or a bright line about potentialities [of impaired driving]." In response, a juror referred to by the prosecutor as Ms. McFarland, said that "a buzz is totally different to each individual person but-I don't know. To me there's no fuzzy line; if you're over the limit, you're over the limit. That's it." Then the prosecutor called on a juror he referred to as Ms. Gallagher. The exchange between that juror and the prosecutor appears to be the statement about the difference between alcohol and other substances mentioned by the prosecutor.
[The Prosecutor]: Ms. Gallagher.
The Juror: Yes. Are we talking just basically about alcohol? It seems there are guidelines for alcohol, but there doesn't seem to be guidelines if you're impaired with other types of drugs.
[The Prosecutor]: I will limit my question to alcohol, just talk about alcohol.
The Juror: I am not. That's why I was asking. I know they have guidelines for drinking, but I don't know that they have guidelines if you are taking drugs or anything else."
[¶37] The jury panel list shows that there was no Ms. Gallagher on the jury panel. Juror 364 was Ms. Gadlin, and juror 370 was Mr. Gallagher. It appears that the prosecutor either referred to Ms. Gadlin as Ms. Gallagher, or to Mr. Gallagher as Ms. Gallagher. Based upon the statements and conduct of the attorneys and the court, the most reasonable conclusion is that the prosecutor erroneously referred to Ms. Gadlin as Ms. Gallagher, and Ms. Gadlin actually made the statements the prosecutor and the court relied upon.
[¶38] Further complicating matters, the court reporter did not indicate the names of the potential jurors anywhere in the transcript-not in the roll call or when specific jurors answered questions. For this reason, I would defer to the district court's conclusion with respect to the prosecutor's credibility. See Snyder , 552 U.S. at 477, 128 S.Ct. at 1208 (quoting Wainwright v. Witt , 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) ) ("We have recognized that these determinations of credibility and demeanor lie 'peculiarly within a trial judge's province.' ") Without additional facts, this case is more indicative of a mistake, whether it be in the prosecutor's misstatement or a reporting error, than it is of the prosecutor using racial motivation to excuse Juror 364. The district court found that Juror 364 made the statements recited by the prosecutor by stating "it's completely understandable that the State would have concern based on Ms. Gadlin's expression of her own concerns, reservations about what she would refer to as a 'bright line.' " Nothing in the record shows this finding was not based on the district judge's own observation and memory. Defense counsel did not dispute that Ms. Gadlin made those statements. We defer to the district court's findings of facts unless "they are clearly erroneous." Custer v. State, 2006 WY 72, ¶ 9, 135 P.3d 620, 623 (Wyo. 2006). The record here does not establish that the district court was clearly erroneous in its findings.
[¶39] However, even assuming the transcript is accurate and the prosecutor relied on a statement that is not supported by the record, the majority has not cited any authority to support a decision that this fact alone should raise an inference that the prosecutor relied on a pretext for purposeful discrimination. Instead of directly jumping to the conclusion that the prosecutor intentionally misrepresented facts to the district *444 court, we should consider whether the prosecutor's statements were an honest mistake in recollection. See People v. Wilson , 351 P.3d 1126, 1132-33 (Colo. 2015) (citing Hurd v. Pittsburg State Univ. , 109 F.3d 1540, 1547 (10th Cir. 1997) ); People v. Jones , 51 Cal.4th 346, 121 Cal.Rptr.3d 1, 247 P.3d 82, 99 (2011) ("Faulty memory, clerical errors, and similar conditions that might engender a 'mistake' of the type the prosecutor proffered to explain his peremptory challenge are not necessarily associated with impermissible reliance on presumed group bias."). "[D]issonance between a prosecutor's race-neutral explanation and the transcript of voir dire does not prove that the prosecutor lied to conceal racial discrimination." Wilson , 351 P.3d at 1132. Thus, courts should look for other facts suggesting racial motivation before concluding the race-neutral reasons are pretextual. Id .
[¶40] The Tenth Circuit Court of Appeals refused to assign a racial motive to an attorney's mistaken or erroneous recollection absent other facts present to support such a conclusion. The court recognized that a mistaken reason can still be a race neutral reason. Hurd , 109 F.3d at 1547. "It is at this stage that the credibility of the proffered reason is tested and the trial court 'may choose to disbelieve' the proffered reason." Id . at 1548. Because the plaintiff provided no explanation or argument that would elevate an understandable error in recollection to an inference of discrimination, the court deferred to the trial court's conclusion that counsel was credible and had truthfully represented his belief (albeit erroneous). Id . ; see also Jones , 121 Cal.Rptr.3d 1, 247 P.3d at 99 ("This 'isolated mistake or misstatement' (citation omitted) does not alone compel the conclusion that this reason was not sincere.").
[¶41] The majority opinion does not point to any facts other than the prosecutor's allegedly erroneous statement that support a conclusion that the prosecutor's challenge to Juror 364 was based on her race. This is insufficient to find that race motivated the prosecutor's decision to strike Juror 364. Wilson , 351 P.3d at 1134 ; see also Jones , 121 Cal.Rptr.3d 1, 247 P.3d at 99. ("Under the circumstances, it is quite plausible that he simply made an honest mistake of fact. Such a mistake would not show racial bias ..."). The majority opinion acknowledges that the prosecutor's reliance on the juror's statement was a race-neutral reason and does not indicate it would have had any quarrel with the district court's conclusion had the statements been reflected in the record. Therefore, without other facts to demonstrate otherwise, we should defer to the district court's determination that the prosecutor's peremptory challenged was not racially motivated.
[¶42] Finally, while the trial court in Snyder did not explain if it relied on the valid demeanor-based reason or the invalid pretextual reason in granting the peremptory challenge, the district court here gave a thorough explanation about why it believed the prosecutor had relied on a valid race neutral reason for the challenge. Although the court relied on the statements attributed to the juror, it also clearly relied on the information about the juror's demeanor. Thus, we are confronted with a different situation than that in Snyder . The Supreme Court later explained its holding in Snyder : "in light of the particular circumstances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge's unexplained ruling." Thaler v. Haynes , 559 U.S. 43, 49, 130 S.Ct. 1171, 1175, 175 L.Ed.2d 1003 (2010). Based on the record before us, I am satisfied that the district court was presented with, and relied upon, a valid race neutral reason to excuse Juror 364. While the statements attributed to Juror 364 are not clearly reflected by the record, the record is sufficiently suspect to lead one to the conclusion that a reporting error occurred and not that the prosecutor used the statements as a pretext for challenging Juror 364 based on her race. Therefore, we cannot conclude the district court's decision was clear error. Consequently, I would affirm Mr. Roberts' conviction and sentence.

Wyo. Stat. Ann. § 31-5-233(e) (LexisNexis 2017) ("On a fourth offense resulting in a conviction or subsequent conviction within ten (10) years for a violation of this section or other law prohibiting driving while under the influence, he shall be guilty of a felony and fined not more than ten thousand dollars ($10,000.00), punished by imprisonment for not more than seven (7) years, or both.").

The record on the peremptory phase of jury selection is not complete. We have only the transcript of the jury selection process and the two Batson hearings. The record does not include, for example, juror questionnaires, the district court's list of panel members, or the paper slips passed by the attorneys to exercise peremptory challenges. This hinders our ability to conduct comparative juror analysis. See Miller-El v. Dretke , 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) (if a prosecutor's reason for striking an African American applies to a similarly-situated white person allowed to serve, it tends to prove purposeful discrimination). Additionally, defense counsel requested the district court to obtain and seal the attorneys' jury selection notes. See infra ¶ 5. Although it is within the district court's discretion to deny the request, it appears that the district court neither examined the attorneys' notes nor ruled on the motion. It is possible that the jury selection notes would have been helpful to our review and, perhaps, dispositive of the issue on appeal. See , e.g. , Dretke , 545 U.S. at 266, 125 S.Ct. at 2340 (using the prosecutors' notes to explain their motivation for striking a potential juror); Foster v. Chatman , --- U.S. ----, 136 S.Ct. 1737, 1747-48, 195 L.Ed. 2d 1 (2016) (discussing the utility of the prosecution's jury selection notes for determining a Batson claim).

The Equal Protection Clause also forbids peremptory challenges against other groups if motivated by purposeful discrimination. See , e.g. , Hernandez v. New York , 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (applying the Batson analysis to peremptory challenges based on ethnicity or national origin); J.E.B. v. Alabama ex rel. T.B. , 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed. 2d 89 (1994) (applying the Batson analysis to peremptory challenges based on gender).

Regardless, Mr. Roberts assuredly met his prima facie burden. Within his first four opportunities, the prosecutor peremptorily struck the only two African Americans from a 31-person venire, and, because Juror 364 did not speak during voir dire, there was no conspicuous, race-neutral reason for striking her. See Johnson v. California , 545 U.S. 162, 164-65, 173, 125 S.Ct. 2410, 2413-14, 2419, 162 L.Ed.2d 129 (2005) (finding that the inference of discrimination was raised where the prosecutor used his peremptory challenges to strike all three of the prospective African American jurors from a panel of 43 eligible jurors and the prosecutor "had no apparent reason to challenge [a] prospective juror 'other than [her] racial identity' ").

The prosecutor asked the panel whether anyone would have difficulty applying the "bright line" of .08 to define DWUI under the law. Four panel members replied, but Juror 364 was not among them. Even accepting the dissent's reconstruction of the record, this juror never referred to a "bright line."

We disfavor after-the-fact hearings held long after the jury has been sworn in and the unselected panel members have been dismissed-let alone after the State has presented its case and rested. Such ex post facto decision-making generally undermines the reliability of the court's conclusions, as finding a violation would require the court to reverse its earlier decision and vacate a nearly-completed trial-an outcome so undesirable that it may effectively raise the bar of proving a violation to an almost-insurmountable height. Additionally, even if a defendant prevailed, the stricken venireperson would be dismissed and not subject to recall, thus allowing the violation of her equal protection to remain uncured. Ultimately, however, on appeal, the very remedy of a deficient Batson hearing often is to remand for a second Batson hearing. See infra ¶ 30. Therefore, in the limited context of a Batson challenge, a trial court's belated redress of a prior, deficient Batson analysis is possibly the most efficient course. But in such a circumstance, non-contemporaneous explanations call for increased scrutiny.

The dissent urges us to "consider whether the prosecutor's statements were an honest mistake in recollection." We leave that determination of credibility to the district court.

See Bueno-Hernandez v. State , 724 P.2d 1132, 1135 (Wyo. 1986) (the prosecutor offered a sufficient neutral explanation for the peremptory challenges and, in the absence of any record of the voir dire proceedings, the appellant failed to establish purposeful discrimination); Jennings v. State , 806 P.2d 1299, 1307 (Wyo. 1991) (the appellant presented no cognizable prima facie case of discrimination under the Batson standard); Espinoza v. State , 969 P.2d 542, 547 (Wyo. 1998) (the transcript substantiated the prosecutor's race-neutral reasons for striking the jurors); Beartusk , 6 P.3d at 143 (no clear error existed to second-guess the trial court's acceptance of the prosecutor's explanations); Mattern , 2007 WY 24, ¶ 13, 151 P.3d at 1123 (the record supported the district court's finding of no purposeful discrimination).