# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 72

APRIL TERM, A.D. 2021

June 1, 2021

STEWART ROY YAZZIE,

Appellant
(Defendant),

v.

S-19-0200, S-20-0251

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*

*Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Professor Lauren McLane, Faculty Director, Andrew Sickenberger, Student Director, Stormi Chrest, Student Intern, Andrea Griena, Student Intern, and Nathan Yanchek, Student Intern, of the Defender Aid Clinic, University of Wyoming, College of Law. Argument by Mr. Yanchek.*

*Representing Appellee:*

*Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General. Argument by Mr. Zintak.*

*Before DAVIS, C.J., and FOX, KAUTZ, and GRAY, JJ., and CONDER, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    A jury found Stewart Yazzie guilty of conspiracy to commit aggravated robbery after the State used two peremptory challenges to strike the only minority jurors in the venire.  Mr. Yazzie's trial counsel did not question the State's use of its peremptory challenges.   Instead, his appellate counsel filed a W.R.A.P. 21 motion asserting Mr. Yazzie's trial attorney provided ineffective assistance of counsel when he failed to raise a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  The district court denied that motion, and we affirm.

## *ISSUES*

[¶2]    We rephrase the issues:

> I.    Can a *Batson* claim not raised at the trial court be raised on direct appeal?

> II.    Is the failure to raise a *Batson* challenge structural error when it is brought in the context of an ineffective assistance of counsel claim?

> III.    Did the district court correctly rule that trial counsel was not ineffective when he failed to raise a *Batson* challenge?

> IV.    Did the district court have a duty to raise *Batson* on its own under the facts of this case?

## *FACTS*

[¶3]    Mr. Yazzie is a member of the Navajo tribe.  By the time the State and the defense had passed the jury for cause, there remained 31 jurors in the venire.  Two of them, Juror #59 and Juror #116, were "visibly minorities."  Juror #59 was Hispanic, and Juror #116 was Native American.  The State used two of its peremptory challenges to strike those jurors resulting in a jury that appeared to consist entirely of Caucasians.  The jury found Mr. Yazzie guilty of conspiracy to commit aggravated robbery.  Mr. Yazzie appealed and then filed a W.R.A.P. 21 motion asserting he received ineffective assistance of counsel.

[¶4]    Mr. Yazzie's trial counsel filed an affidavit explaining that he did not "raise a *Batson* challenge regarding the strike of [Juror #116 and Juror #59] because I did not think the challenge would be successful."  He believed a successful *Batson* challenge required a showing of a "continuous pattern of discrimination," which the Wyoming Public Defender's office could not show.

1

[¶5]    The prosecuting attorney testified at the Rule 21 hearing that he had no knowledge whether Mr. Yazzie or the two jurors were members of a minority.  He explained he struck Juror #59 because he:

> A.    . . . responded affirmatively to [defense counsel's] question of whether people wanted to be here or not, and he said he did not want to be here.  And more concerning, he said "I'm the only one that's willing to say it."  Implying that other people did not want to be there and did not want to serve on the jury.
>
> Q.    And you thought this would be adverse to you in this case?
>
> A.    I think it would be adverse to the process of justice generally, not just the State.

[¶6]    He listed several reasons for striking Juror #116, the juror identified as Native American:

> Q.    Okay.  Let's talk a little bit about [Juror #116].  Why did you strike [Juror #116]?
>
> A.    There were a couple of reasons.  This case was going to be about witness credibility, weighing the evidence, those types of things.
>
> I think the value of having a spouse, having children, and having a job that interacts with the public on a regular basis is all going to help that.  [Juror #116] didn't have any of those.  He was single, he didn't have any children.  He had a stock position, a stockman's position where he was putting cans on the shelf at night at Albertson's.  And then when he appeared at the voir dire, he advised he was an industrial cleaning services person.  So there was also my concern that he was -- he also had just recently changed jobs.
>
> I believe I asked in my normal voir dire whether anybody has a reason to have their mind be wandering, or to have some issue going on outside of the hearing.  His continued job or new job, especially if I was in his situation I would be concerned about making sure I continued to appear at my job and maintain that, so that was concerning it was a new job.

Additionally, in reviewing the paperwork, and I don't have specific information that I recall this, but what jumped out at me is that he advised that he was a resident of Campbell County for four years on his questionnaire, but advised it was six years at the time he was in the jury, or in the jury panel voir dire process.

In addition, the State's attorney noted that Juror #116 indicated on his juror questionnaire that he or a family member had been a complainant, defendant, or witness in a criminal case.

[¶7]   Mr. Yazzie argued that those reasons applied to several other jurors and therefore could not survive a *Batson* challenge. The district court found, however, that the State's proffered race-neutral reasons for striking the two jurors were credible. Mr. Yazzie appealed that ruling, and that appeal was consolidated with his original appeal.

## *DISCUSSION*

[¶8]   Peremptory challenges, though not required by the constitution, "traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." *Batson*, 476 U.S. at 91, 106 S.Ct. at 1720. A peremptory challenge, unlike a challenge for cause, does not require persuading the judge of a prospective juror's bias or other disqualification. *Compare* Wyo. Stat. Ann. § 7-11-103 and § 7-11-105. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965) (citations omitted), *overruled on other grounds by Batson*, 476 U.S. 79, 106 S.Ct. 1712. The conflict that *Batson* was intended to address lies in the intersection of the inscrutability of the peremptory challenge and the constitutional right to equal protection of the laws. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719.

[¶9]   The Supreme Court has recognized since 1880 that "the State denies a [B]lack defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson*, 476 U.S. at 85, 106 S.Ct. at 1716 (citing *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880), *abrogated by Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). The Court addressed discrimination in the selection of the jury venire in a series of cases after *Strauder*. *See, e.g.*, *Neal v. Delaware*, 13 Otto 370, 103 U.S. 370, 397, 26 L.Ed. 567 (1880); *Martin v. Texas*, 200 U.S. 316, 321, 26 S.Ct. 338, 339, 50 L.Ed. 497 (1906); *Norris v. Alabama*, 294 U.S. 587, 599, 55 S.Ct. 579, 584, 79 L.Ed. 1074 (1935); *Akins v. Texas*, 325 U.S. 398, 403, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945); *Thiel v. S. Pacific Co.*, 328 U.S. 217, 223-24, 66 S.Ct. 984, 987-88, 90 L.Ed. 1181 (1946); *Carter v. Jury Comm'n of Greene Cnty.*, 396 U.S. 320, 330, 90 S.Ct. 518, 523-24, 24 L.Ed.2d 549

3

(1970).  In *Swain*, 380 U.S. 202, 85 S.Ct. 824, the Court took on the application of equal protection to the State's use of peremptory challenges, establishing a rule that required a defendant to prove that the prosecutor repeatedly struck Black jurors over a series of cases to establish an equal protection violation.  In *Batson*, the Court recognized that "interpretation of *Swain* has placed on defendants a crippling burden of proof," and it adopted a new framework for establishing an equal protection violation in the use of peremptory strikes.  *Id.* at 92, 106 S.Ct. at 1721.

[¶10]   A *Batson* challenge is a three-step process.  *Pickering v. State*, 2020 WY 66, ¶ 15, 464 P.3d 236, 245 (Wyo. 2020) (citing *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719).

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Pickering*, 2020 WY 66, ¶ 15, 464 P.3d at 245 (emphasis omitted) (quoting *Foster v. Chatman*, 578 U.S. at —, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016)).  The "burden of persuasion rests with, and never shifts from, the opponent of the strike." *Johnson v. California*, 545 U.S. 162, 171, 125 S.Ct. 2410, 2417, 162 L.Ed.2d 129 (2005) (citation omitted).

> [E]ven if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end–it merely proceeds to step three.  The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim.  It is not until the *third* step that the persuasiveness of the justification becomes relevant–the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.

*Johnson*, 545 U.S. at 171, 125 S.Ct. at 2417-18 (emphasis in original) (footnote omitted) (citations omitted).

[¶11]   In his concurring opinion, Justice Thurgood Marshall predicted that *Batson* "will not end the racial discrimination that peremptories inject into the jury-selection process." *Id.* at 102-03, 106 S.Ct. at 1726 (Marshall, J., concurring).  His "assessment has echoed through judicial opinions and academic articles to the point that it is considered a mainstream view of *Batson*."   Jonathan Abel, *Batson's Appellate Appeal and Trial*

*Tribulations*, 118 Colum. L. Rev. 713, 717 (2018), and see cases at n.13. But *Batson* retains its vigor. The Court has extended its principles to apply to gender-based peremptories, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129-31, 114 S.Ct. 1419, 1422, 128 L.Ed.2d 89 (1994) and ethnic-origin peremptories, *Hernandez v. New York*, 500 U.S. 352, 355, 111 S.Ct. 1859, 1864, 114 L.Ed.2d 395 (1991). "A defendant of any race may raise a *Batson* claim . . . even if the defendant and the excluded juror are of different races;" and *Batson* can apply to a criminal defendant's peremptory strike and to civil cases. *Flowers v. Mississippi*, — U.S. —, 139 S.Ct. 2228, 2243, 204 L.Ed.2d 638 (2019).

## I. There Is No Direct Appeal of a Batson Claim if It Was Not Raised in the Trial Court

[¶12] First, to the extent Mr. Yazzie is attempting to make a direct appeal of the State's disqualification of minority jurors, that is not available. We have said that if such a "claim is not made in a timely fashion, usually before the venire is dismissed, the claim is deemed to be waived." *Sorensen v. State*, 6 P.3d 657, 662 (Wyo. 2000) (citing *U.S. v. Romero-Reyna*, 867 F.2d 834, 837 (5th Cir. 1989)). We therefore examine the issue only through the lens of ineffective assistance of counsel.

## II. The Failure to Raise a Batson Challenge Is Not Usually Structural Error When It Is Brought in the Context of an Ineffective Assistance of Counsel Claim

[¶13] "Structural error" is essentially an error so grave that it is grounds for reversal without any showing of prejudice. It is a fundamental constitutional error "so intrinsically harmful as to require automatic reversal (*i.e.*, 'affect substantial rights') without regard to their effect on the outcome." *Neder v. U.S.*, 527 U.S. 1, 7, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999). Its application has not always been clear. *See Schmuck v. State*, 2017 WY 140, ¶ 31, 406 P.3d 286, 297 (Wyo. 2017); *Granzer v. State*, 2008 WY 118, ¶ 15, 193 P.3d 266, 271 (Wyo. 2008). "[W]e have recognized structural errors such as a complete deprivation of the right to trial counsel or the lack of an impartial judge." *Mellott v. State*, 2019 WY 23, ¶ 24, 435 P.3d 376, 385 (Wyo. 2019).

[¶14] As the United States Supreme Court has explained:

> some errors should not be deemed harmless beyond a reasonable doubt. [*Chapman v. California*, 386 U.S. 18,] 23, n.8, 87 S.Ct. 824, 17 L.Ed.2d 705 [(1967)]. These errors came to be known as structural errors. See *Fulminante*, 499 U.S. at 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302. The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it "affect[s] the framework within which the trial proceeds," rather than being "simply an

error in the trial process itself." *Id.*, at 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. For the same reason, a structural error "def[ies] analysis by harmless error standards." *Id.*, at 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (internal quotation marks omitted). *Weaver v. Massachusetts*, — U.S. —, —, 137 S.Ct. 1899, 1907-08, 198 L.Ed.2d 420, 431 (2017).

*Sorensen v. State*, 2019 WY 80, ¶ 17, 444 P.3d 1283, 1287 (Wyo. 2019) (alterations in original).

[¶15] The *Weaver* Court recognized three bases for finding structural error: (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest"; (2) "if the effects of the error are simply too hard to measure"; or (3) "if the error always results in fundamental unfairness." *Id.* at 1908. Mr. Yazzie contends that trial counsel's failure to raise a *Batson* challenge falls under the first and second categories. He points out that the caselaw protecting against disqualification of jurors on the basis of prejudice is intended to protect both the defendant's right to a fair trial before a jury of his peers and the right of the prospective juror to serve.

> Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. A venireperson excluded from jury service because of race suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror.

*Powers v. Ohio*, 499 U.S. 400, 413-14, 111 S.Ct. 1364, 1372, 113 L.Ed.2d 411 (1991). And, he contends, it is difficult to measure the effects of discrimination in jury selection.

[¶16] It may be that a *Batson* error would qualify as a structural error on direct appeal, since it "'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, — U.S. —, —, 137 S.Ct. 1899, 1907, 198 L.Ed.2d 420 (2017) (alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)).[1] We need not decide that question, however. The United States Supreme Court has made it clear that a claim that would be reviewed as structural error on direct appeal is reviewed

---

[1] "[T]hough the Court has yet to label those errors structural in express terms." *Weaver*, — U.S. at —, 137 S.Ct. at 1911.

under a different standard when it is wrapped in an ineffective assistance of counsel claim. "'[A]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial,' thus undermining the finality of jury verdicts. For this reason, the rules governing ineffective-assistance claims 'must be applied with scrupulous care.'" *Weaver*, — U.S. at —, 137 S.Ct. at 1912 (citations omitted).[2] In *Weaver*, which dealt with a public-trial violation, the Court reasoned:

> The reason for placing the burden on the petitioner in this case, however, derives both from the nature of the error . . . and the difference between a public-trial violation preserved and then raised on direct review and a public-trial violation raised as an ineffective-assistance-of-counsel claim. As explained above, when a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed. . . . When a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure.
>
> Furthermore, when state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of remedying the error are diminished to some extent. That is because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost. There are also advantages of direct judicial supervision. Reviewing courts, in the regular course of the appellate process, can give instruction to the trial courts in a familiar context that allows for elaboration of the relevant principles based on review of an adequate record. For instance, in this case, the factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.

*Id*.

---

[2] The *Weaver* Court left open the possibility that an error deemed structural because it will always result in fundamental unfairness, might be reviewed as structural error even under an ineffective assistance of counsel claim. *Meadows v. Lind*, No. 19-1320, 2021 WL 1827152, at *6 (10th Cir. May 7, 2021).

[¶17]  We decline to apply structural error under the United States Constitution to this issue.  Mr. Yazzie urges this Court to apply structural error based on the Wyoming Constitution.  He raises that argument for the first time on appeal, and we therefore do not consider it.[3]  *See Sheesley v. State*, 2019 WY 32, ¶ 16 n.6, 437 P.3d 830, 837 n.6 (Wyo. 2019).

[¶18]  We turn then to the two-pronged *Strickland* analysis for determining ineffective assistance of counsel.

### III.  *The District Court Correctly Ruled That Trial Counsel Was Not Ineffective When He Failed to Raise a Batson Challenge*

### A.  Standard of Review

[¶19]  Orders denying Rule 21 motions involve mixed questions of law and fact.  The district court's findings of fact will not be overturned unless they are clearly erroneous.  The district court's conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct, are reviewed de novo.  *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021).

[¶20]  We apply the familiar *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), two-prong test to determine if a defendant received ineffective assistance of counsel.  *See, e.g.*, *Sides*, 2021 WY 42, ¶ 34, 483 P.3d at 137; *Shields v. State*, 2020 WY 101, ¶ 44, 468 P.3d 1097, 1109-10 (Wyo. 2020); *Winters v. State*, 2019 WY 76, ¶¶ 11-12, 446 P.3d 191, 198-99 (Wyo. 2019); *Griggs v. State*, 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016); *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015); *Bloomer v. State*, 2010 WY 88, ¶ 18, 233 P.3d 971, 976 (Wyo. 2010); *Schreibvogel v. State*, 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo. 2010); *Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo. 2007).

> A criminal defendant has the right to the effective assistance of counsel.  U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel." (quotations omitted)).  When a defendant claims he has been denied that right, he must show <u>both</u> that counsel's performance was deficient, and he was prejudiced as a result.  *Galbreath v.*

---

[3] It is true the trial court raised the question of structural error *sua sponte* at the end of the Rule 21 hearing.  But, Mr. Yazzie had the opportunity to address structural error under the Wyoming Constitution, and did not, in his Proposed Findings of Fact and Conclusions of Law.

> *State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015); *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel acts deficiently when he "fail[s] to render such assistance as would have been offered by a reasonably competent attorney." *Galbreath*, ¶ 5, 346 P.3d at 18 (quoting *Bloomer v. State*, 2010 WY 88, ¶ 18, 233 P.3d 971, 976 (Wyo. 2010)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of [appellant's] trial would have been different.'" *Id.* (quoting *Bloomer*, ¶ 18, 233 P.3d at 976). A failure to establish one of the two prongs dooms an ineffective assistance of counsel claim. *Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo. 2007).

*Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351-52 (Wyo. 2021) (emphasis in original) (quoting *Shields*, 2020 WY 101, ¶ 44, 468 P.3d at 1109).

[¶21] Because a defendant must establish both prongs, a court can decide an ineffective assistance claim on the prejudice prong without considering the deficient performance prong. *Wall v. State*, 2019 WY 2, ¶ 39, 432 P.3d 516, 527 (Wyo. 2019) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069). We will decide this issue on the prejudice prong.[4]

[¶22] There is a wrinkle in our analysis of *Strickland* prejudice when we are presented with a *Batson* claim. Mr. Yazzie argues, and the State agrees, that Mr. Yazzie can satisfy the prejudice prong by demonstrating that a *Batson* challenge would have been successful. He need not establish that the entire outcome of the trial would have been more favorable to him. As the State points out, this "narrow approach . . . is more consistent with the framework of a preserved *Batson* claim, where appellate courts apply automatic reversal if [they] find[] the trial court's *Batson* conclusion was erroneous."

[¶23] Several courts have applied the "narrow approach." *See, e.g.*, *U.S. v. Lighty*, 2016 WL 8669911, at *4 (D. Md. Aug. 12, 2016) (If there is a reasonable probability a *Batson* claim would have been successful, the prejudice prong of *Strickland* is satisfied. "Petitioners need not demonstrate a reasonable probability that the final outcome of the trial would have been different . . . ."); *Juniper v. Zook*, 117 F. Supp. 3d 780, 798 (E.D. Va. 2015); *Mitcham v. Davis*, 103 F. Supp. 3d 1091, 1100-21 (N.D. Cal. 2015); *Carrera v. Ayers*, 699 F.3d 1104, 1108 (9th Cir. 2012); *In re Commitment of Taylor*, 272 Wis.2d 642, 679 N.W.2d 893, 897-903 (2004); *Conner v. State*, 684 So.2d 608, 612 (Miss. 1996); *Davidson v. Gengler*, 852 F. Supp. 782, 785 (W.D. Wis. 1994). Other courts have

---

[4] The district court found that defense "counsel did not fully comprehend the scope or application of *Batson*" but did not determine whether that constituted deficient performance under *Strickland*.

applied the traditional prejudice rule, requiring a showing that the outcome of the trial would have been more favorable to the defendant. *See, e.g.*, *Strong v. State*, 263 S.W.3d 636, 646-49 (Mo. 2008) (en banc); *Morales v. Greiner*, 273 F. Supp. 2d 236, 252-53 (E.D.N.Y. 2003); *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1361-62 (11th Cir. 1995); *Batiste v. State*, 888 S.W.2d 9, 14-17 (Tex. Crim. App. 1994).

[¶24]  We think the "narrow approach" is the better-reasoned one.  A prosecutor's "race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings.  . . .  The composition of the trier of fact itself is called in question, and the irregularity may pervade all the proceedings that follow." *Powers*, 499 U.S. at 412-13, 111 S.Ct. at 1371-72.  Because the purpose of a *Batson* challenge is to protect the integrity of the proceedings as much as it is to ensure a fair outcome, we agree with the application of the "narrow approach," that requires only that the appellant establish a *Batson* challenge would have been successful to satisfy the *Strickland* prejudice prong.

**B.      Mr. Yazzie Did Not Satisfy His Burden of Establishing That a *Batson* Challenge Would Have Succeeded**

[¶25]  Mr. Yazzie's *Batson* challenge "is primarily focused on the State's peremptory strike of [Juror #116]."  He contends that striking Juror #59 is "instructive" because he was the only other minority juror on the panel, but apparently recognizes that "[a] prosecutor may validly strike a venireperson who appears to be disinterested in serving on the jury." *Roberts v. State*, 2018 WY 23, ¶ 15, 411 P.3d 431, 437-38 (Wyo. 2018) (citing *Beartusk v. State*, 6 P.3d 138, 142 (Wyo. 2000)).

### Step 1: Establishing a Prima Facie Case

[¶26]  To establish a prima facie case, the challenger must "show[] that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721 (citation omitted).  A prima facie case may be made "with proof of systematic exclusion of that racial group from juries over time, or with proof that the facts of the particular case show purposeful racial discrimination." *Mattern v. State*, 2007 WY 24, ¶ 8, 151 P.3d 1116, 1122 (Wyo. 2007) (citing *Batson*, 476 U.S. at 93-97, 106 S.Ct. at 1721-23), *abrogation on other grounds recognized in Pickering*, 2020 WY 66, 464 P.3d 236.  "This showing is not onerous, nor does it require the [challenger] to meet the ultimate burden of proof." *Pickering*, 2020 WY 66, ¶ 16, 464 P.3d at 246 (alteration in original) (quoting *Williams v. State*, 134 Nev. 687, 429 P.3d 301, 306 (2018)).

10

[¶27]  The district court was ambivalent about whether Mr. Yazzie had established a prima facie case.[5]  But it went on to analyze the second and third *Batson* steps.  "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Roberts*, 2018 WY 23, ¶ 14, 411 P.3d at 437 (quoting *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866).

### Step 2: Race-Neutral Explanation

> To satisfy the second step of the *Batson* analysis, the prosecutor simply must provide "an explanation based on something other than the race of the juror."  *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866.  The explanation "need not be persuasive, or even plausible. . . .  [A]ll that is required is an explanation that is facially valid."  *Mattern*, 2007 WY 24, ¶ 9, 151 P.3d at 1122 (citing *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam)).

*Pickering*, 2020 WY 66, ¶ 17, 464 P.3d at 246 (quoting *Roberts*, 2018 WY 23, ¶ 15, 411 P.3d at 437).

[¶28]  The prosecutor testified at the Rule 21 hearing to several reasons for striking Juror #116: He did not have a spouse or children; did not have a job that interacts with people; he had recently changed jobs; there was a two-year discrepancy in the time he reported having been a Campbell County resident; he or a family member had been a complainant, defendant, or witness in a criminal case.

### Step 3: Determining Whether the Objecting Party Proved the Striking Party Exercised Peremptory Challenges with a Discriminatory Purpose

> In the final step, "the essence of the *Batson* analysis," the district court must determine whether the defendant has proven purposeful discrimination.  *Roberts*, ¶ 17, 411 P.3d at 438.  The decisive question is "whether counsel's race-neutral

---

[5] The district court was concerned that the only basis for identifying the race of the two jurors was defense counsel's testimony at the Rule 21 hearing, and "[n]o questions were asked by either trial counsel during voir dire to establish the race or the ethnicity of any of the members of the venire."  We have never addressed whether or how the parties or the courts should obtain the information necessary to ascertain jurors' race or ethnicity or what information should be provided to the defendant in such circumstances. *See, e.g.*, *State v. Plain*, 898 N.W.2d 801, 828 (Iowa 2017), *holding modified by State v. Lilly*, 930 N.W.2d 293 (Iowa 2019).

explanation for a peremptory challenge should be believed." *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869. The district court "must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" and "consider all relevant circumstances" before ruling on a *Batson* objection. *Batson*, 476 U.S. at 93, 96, 106 S.Ct. at 1721, 1723 (internal citation and quotation marks omitted).

*Pickering*, 2020 WY 66, ¶ 18, 464 P.3d at 246-47.

[¶29] The district court found that "counsel for the State was forthright and highly credible." Relying on a comparative juror analysis recognized as one method of establishing purposeful discrimination, Mr. Yazzie did a very thorough job in his Rule 21 hearing, and on appeal, of comparing the race-neutral reasons the prosecutor gave for striking Juror #116 with the characteristics of other jurors who were selected to serve on the jury. *See Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) ("If a prosecutor's proffered reason for striking a [B]lack panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step."). Even accepting some of the assumptions Mr. Yazzie makes about the comparable jurors, we must conclude, as the district court did, that, while there were jurors who shared some of Juror #116's disqualifying characteristics, "none had all of the attributes counsel for the State ascribed to his determination to use a strike on Juror 116."

[¶30] The district court's fact findings are not clearly erroneous. It did err as a matter of law in basing its prejudice decision on a finding that the verdict would not have been different. However, it correctly concluded that the *Batson* challenge would not have succeeded because the State's reasons "for utilizing a peremptory challenge on Juror 116 were neutral and non-discriminatory." We conclude Mr. Yazzie did not establish he was prejudiced by any deficient performance of his counsel.

## IV. The District Court Had No Duty to Raise Batson on Its Own Under the Facts of This Case

[¶31] Mr. Yazzie contends the district court should have addressed the *Batson* issue even without an objection by either party. He argues it is the job of trial judges to enforce *Batson*, and cites *Edmonson v. Leesville Concrete Co.*:

> Without the direct and indispensable participation of the judge, who beyond all question is a state actor, the peremptory challenge system would serve no purpose. By enforcing a discriminatory peremptory challenge, the court "has not only made itself a party to the [biased act], but has

12

elected to place its power, property and prestige behind the [alleged] discrimination." *Burton v. Wilmington Parking Authority*, 365 U.S., at 725, 81 S.Ct., at 862. In so doing, the government has "create[d] the legal framework governing the [challenged] conduct," *National Collegiate Athletic Assn.*, 488 U.S., at 192, 109 S.Ct., at 462, and in a significant way has involved itself with invidious discrimination.

*Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 624, 111 S.Ct. 2077, 2085, 114 L.Ed.2d 660 (1991) (alterations in original).

[¶32] It is certainly true that "trial judges possess the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection process." *Flowers*, — U.S. —, 139 S.Ct. at 2243. That is a long way from saying it is the trial court judge's duty to identify and *sua sponte* root out discrimination in jury selection. We find no support for such a proposition in any precedent applying the United States Constitution, and for reasons discussed *supra* ¶ 17, we do not consider whether such authority exists in the Wyoming Constitution.

## *CONCLUSION*

[¶33] When a *Batson* challenge is not raised below, it cannot be raised on direct appeal, and it cannot be challenged as structural error. We conclude that Mr. Yazzie did not carry his burden of demonstrating ineffective assistance of counsel because he did not establish that a *Batson* challenge would have been successful. Finally, the district court had no duty to raise *Batson sua sponte* under the facts of this case.