# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 111

OCTOBER TERM, A.D. 2021

October 13, 2021

CHARLES SAMUEL RICHMOND,

Appellant
(Defendant),

v.

S-20-0098, S-21-0053

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*

> Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*

> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Charles Richmond was convicted of second-degree murder after he shot John Paul Birgenheier.  On appeal, Mr. Richmond contends his trial counsel was ineffective in failing to adequately advise him regarding his right to testify and in failing to present a defense.  We affirm.

*ISSUE*

[¶2]    Was Mr. Richmond's trial counsel ineffective?

*FACTS*

[¶3]    Mr. Richmond and Mr. Birgenheier were neighbors with a troubled relationship. On the afternoon of December 5, 2018, the two fought in Mr. Richmond's room over money and a missing bong.  Mr. Birgenheier, a younger and larger man,[1] threatened Mr. Richmond with a piece of a broken chair, pushed him to the ground several times, said, "I'll wipe you out," and left the house to return to his nearby camper.  A short time later, Mr. Birgenheier stepped outside of the camper to smoke.  His companion heard three shots and then heard Mr. Birgenheier screaming.  She opened the camper door and saw Mr. Richmond holding a smoking shotgun and Mr. Birgenheier lying on the ground.

[¶4]    A passing neighbor saw Mr. Richmond walk out of the house with a shotgun and disappear behind the camper, heard three shots, and saw him walk back into the house with the gun.  The neighbor called 911.  When Officer Michael Webster responded, he found Mr. Birgenheier in his companion's arms.  Mr. Richmond appeared at the front of the camper with his hands up and said, "I'm sorry," and Officer Webster arrested him. EMTs arrived and pronounced Mr. Birgenheier dead.

[¶5]    An autopsy revealed Mr. Richmond shot Mr. Birgenheier in the chest and upper arm with buckshot, in the right side of his back with a slug, and in the perineum with a slug.  The medical examiner determined the first two shots were survivable, but the shot in the perineum was fatal.

[¶6]    Mr. Richmond was charged with first-degree murder under Wyo. Stat. Ann. § 6-2-101(a).  He pleaded not guilty and proceeded to trial on a self-defense theory.  The State presented testimony from several witnesses including Mr. Birgenheier's companion, the neighbor, and several officers, detectives, and experts.  With a stipulation from Mr. Richmond's defense team, the State played Officer Webster's bodycam video, the

---

[1] Mr. Richmond was 78 at the time, 5'11" tall, and approximately 185 pounds.  Mr. Birgenheier was 41, 6' tall and weighed 200 pounds.

1

video of Mr. Richmond's ride to the police station, and the video of Mr. Richmond's interrogation at the station. In each video, Mr. Richmond volunteered that Mr. Birgenheier had stolen from him and beaten him up, and that he shot Mr. Birgenheier because Mr. Birgenheier "charged" or "came at" him.

[¶7] When the State rested its case, the district court excused the jury and addressed Mr. Richmond. The court stated Defense Counsel had advised that Mr. Richmond did not intend to testify. The court then asked, "Do you, Charles Richmond, understand that you have the right to testify in your own defense on all claims in the charge asserted against you in this case?" Mr. Richmond responded, "I'm willing to do that, but nobody's heard my side of the story yet." Mr. Richmond's attorney said he needed a minute to confer with him and acknowledged, "[H]e has an absolute right to testify." The district court agreed and recessed until after lunch. The court then resumed its inquiry:

> THE COURT: [Defense Counsel], immediately prior to the lunch break, I attempted to engage in a colloquy with your client regarding your representation that he intended not to testify, we got a little bit different information from him, and you wanted some time with him. Tell me how or if that resolved.
>
> [DEFENSE COUNSEL]: Your honor, I do believe that Mr. Richmond is deferring to the advice of counsel and decided he will not testify.
>
> THE COURT: Well, let me ask him about it. Mr. Richmond, if you would stand up one more time, please. You heard what [Defense Counsel] just said, Mr. Richmond, he's advised that you intend not to testify, in fact not to call any witnesses to testify. Do you understand, Mr. Richmond, you have the right to testify in your own defense in this case?
>
> [MR. RICHMOND]: Yes, I understand.
>
> THE COURT: Do you knowingly and voluntarily waive or give up that right to testify in your own defense in this case?
>
> [MR. RICHMOND]: Yes, Your Honor.
>
> THE COURT: Okay.

[MR. RICHMOND]: I've talked to the lawyers and they told me my problems with not testifying. They assured me they're going to tell my side of the story, so—

THE COURT REPORTER: I'm sorry, I can't hear.

[DEFENSE COUNSEL]: He said, "They assured me they're going to tell my side of the story."

THE COURT: Okay. Thank you, [Defense Counsel]. And, Mr. Richmond, do you understand that right now is the last opportunity that you're going to have to make a decision about testifying?

[MR. RICHMOND]: I understand.

THE COURT: Okay. And you talked with [your defense team] about that decision?

[MR. RICHMOND]: Yes, I did.

THE COURT: Okay. Thank you, Mr. Richmond.

[MR. RICHMOND]: They assured me they're going to do the right thing and—

THE COURT: They assured you they were going to do the right thing. Is that what you just said?

[MR. RICHMOND]: Yes.

THE COURT: Thank you.

[¶8]    The jury acquitted Mr. Richmond of first-degree murder, but convicted him of the lesser included offense of second-degree murder. Mr. Richmond was sentenced to twenty-five to twenty-eight years incarceration.

[¶9]    Mr. Richmond appealed and then filed a W.R.A.P. 21 motion, in which he made several arguments, two of which he raised on appeal. He alleged his trial counsel was deficient first, for denying him the ability to make a knowing and voluntary waiver of the right to testify; and second, for failing to develop and prepare a defense. This Court

stayed briefing on the appeal, and the district court held a hearing on the W.R.A.P. 21 motion.

[¶10] Mr. Richmond testified that his counsel never prepared him to testify, that he agreed not to testify because his attorneys promised to present his case, and that he did not believe they ever presented his case. Mr. Richmond called an expert in criminal defense trial litigation who testified that, based on Mr. Richmond's account and his review of parts of the trial transcript, he "wasn't really comfortable that Mr. Richmond made his decision [not to testify] knowingly." The district court concluded that Mr. Richmond did not present sufficient evidence that his trial counsel's advice to him was anything but strategic and competent, and therefore he failed to show ineffective assistance of counsel. The district court denied Mr. Richmond's motion for a new trial, and he appealed. We consolidated the appeals.

## *STANDARD OF REVIEW*

[¶11] "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)). "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Jendresen*, 2021 WY 82, ¶ 36, 491 P.3d at 284 (citing *Sides*, 2021 WY 42, ¶ 34, 483 P.3d at 137).

[¶12] The Sixth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant assistance of counsel. *Herdt v. State*, 891 P.2d 793, 796 (Wyo. 1995); *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel."), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *see also Yazzie v. State*, 2021 WY 72, ¶ 20, 487 P.3d 555, 562 (Wyo. 2021) (right to counsel also guaranteed by Wyo. Const. art. 1, § 10). We apply the two-prong *Strickland* test to determine whether a defendant received ineffective assistance of counsel. *Yazzie*, 2021 WY 72, ¶ 20, 487 P.3d at 562 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). First, we ask whether counsel's performance was substantially below that of a reasonably competent attorney. *Yazzie*, 2021 WY 72, ¶ 20, 487 P.3d at 562 (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351-52 (Wyo. 2021)); *Dixon v. State*, 2019 WY 37, ¶ 56, 438 P.3d 216, 236 (Wyo. 2019) (citing *Wall v. State*, 2019 WY 2, ¶ 39, 432 P.3d 516, 527 (Wyo. 2019)). Second, we ask whether, absent that deficient performance, there is a reasonable probability the outcome of the trial would have been more favorable to the appellant. *Yazzie*, 2021 WY 72, ¶ 20, 487 P.3d at 562; *Fairbourn v. State*, 2020 WY 73, ¶ 61, 465 P.3d 413, 428 (Wyo. 2020) (quoting *Bittleston v. State*, 2019 WY 64, ¶ 31, 442 P.3d 1287, 1295 (Wyo. 2019)).

[¶13] "A failure to establish one of the two prongs dooms an ineffective assistance of counsel claim." *Yazzie*, 2021 WY 72, ¶ 20, 487 P.3d at 562 (citation omitted). Because a defendant must establish both prongs, "a court can decide an ineffective assistance claim on the prejudice prong without considering the deficient performance prong." *Id.* at ¶ 21, 487 P.3d at 563 (citing *Wall*, 2019 WY 2, ¶ 39, 432 P.3d at 527). We conclude that Mr. Richmond has not met his burden of establishing either prong.

## DISCUSSION

[¶14] Mr. Richmond claims his counsel was ineffective for "failing to allow his client to make a knowing and voluntary decision as to his constitutional right to testify on his own behalf," and for "failing to present a case."

### I.    Mr. Richmond Made a Knowing and Voluntary Decision Not to Testify

[¶15] A criminal defendant's right to testify is grounded in the Fourteenth, Sixth, and Fifth Amendments to the United States Constitution. *Barker v. State*, 2006 WY 104, ¶ 22, 141 P.3d 106, 114-15 (Wyo. 2006).

> In order to succeed on appeal, an appellant must initially demonstrate that he was denied his right to testify and that he would have offered relevant testimony if he had testified. If an appellant satisfies his initial burden, the state has the responsibility to show that the denial of the appellant's right to testify was harmless error beyond a reasonable doubt.

*Id.* (cleaned up).

[¶16] Mr. Richmond admits that he waived his constitutional right to testify but claims that, "[b]y the failure of his counsel, he was not afforded an informed choice." He contends his waiver was secured by inadequate preparation and a "material misrepresentation" that his story was going to be told. He alleges, therefore, his counsel failed to "allow [him] to make a knowing and voluntary decision as to his constitutional right to testify on his own behalf." Implicit in his argument is the contention he would have chosen to testify had he been adequately informed.

[¶17] The record is clear that the district court, upon learning that Mr. Richmond was uncertain whether he wanted to testify, took a lunch recess so that he could confer with counsel and then obtained his clear waiver when the court reconvened. In *Herdt*, 891 P.2d at 798, we rejected Mr. Herdt's contention that he had not made a knowing and voluntary waiver of his right to testify, finding that his waiver was constitutionally sufficient. Just as in *Herdt*, "[t]he trial court explained [the] right to [the defendant],

inquired into whether [he] understood this right and the consequences thereof, and whether [he] was making his own decision after consulting with his attorneys." *Id.* Further, no harm resulted to Mr. Richmond from any denial of his right to testify. *See Jackson v. State*, 2019 WY 81, ¶ 28, 445 P.3d 983, 991 (Wyo. 2019). We conclude, as the *Herdt* court did, that Mr. Richmond "has failed his burden under the first prong of the *Strickland* test, that being that his trial counsel's performance was deficient." *Herdt*, 891 P.2d at 798.

## II.     Mr. Richmond's Failure to Testify Did Not Prejudice Him

[¶18] Even though Mr. Richmond did not testify, the jury heard several facts and testimony from other witnesses that supported his self-defense theory. The jury learned Mr. Birgenheier used methamphetamine, and his toxicology report revealed he had marijuana and methamphetamine in his system when he died. They learned Mr. Birgenheier had a reputation for being aggressive and violent, and that he was younger and bigger than Mr. Richmond. Several witnesses affirmed there was a fight in the basement. The jury saw photos of the piece of a broken chair that Mr. Birgenheier used to threaten Mr. Richmond and photos of Mr. Richmond's injuries from when Mr. Birgenheier pushed him to the ground or caused him to fall backward. There was conflicting testimony on the distance between Mr. Richmond and Mr. Birgenheier when the shots were fired. The State's expert admitted Mr. Birgenheier could have been charging Mr. Richmond when Mr. Richmond fired the first shot, and the responding officer admitted Mr. Richmond may have feared for his life. The jury knew no witnesses saw the entire altercation, including the moments leading up to the first shot. The detective who interviewed Mr. Richmond testified that it is normal in self-defense situations for the defendant to "shoot until the threat has stopped," and that he found Mr. Richmond's story credible and consistent throughout. In opening remarks, Defense Counsel emphasized Mr. Richmond's narrative that he "fear[ed] for his very life," was "terrified," and that Mr. Birgenheier "charged at Charlie like a grizzly bear charging out of the woods." In closing, Defense Counsel emphasized that the pattern of shots was consistent with Mr. Richmond defending against Mr. Birgenheier's charge by "shoot[ing] until the threat is gone."

[¶19] At the Rule 21 hearing, Mr. Richmond testified he would have told the jury:

> this guy broke into my house and stole my food, broke into my truck and stole my tools. He wanted money, but he said he was never going to give that money back. And he knocked me around my room. I was so angry that I took my shotgun and told him to get off – I went out back and told him to get off the property and he attacked.

6

[¶20]   Mr. Richmond's story, had he testified, would have been that he was angry, took his shotgun, and left his basement to go to Mr. Birgenheier's home, where he shot him. The omission of such testimony was harmless beyond a reasonable doubt.  There is no reasonable probability that such testimony would have done anything other than assist the State to meet its burden of proving beyond a reasonable doubt that Mr. Richmond did not act in self-defense.  As the district court correctly instructed the jury, "[t]he right to use self-defense is not available to an aggressor unless the aggressor has regained his right to use self-defense."  *See Drennen v. State*, 2013 WY 118, ¶ 36, 311 P.3d 116, 129 (Wyo. 2013).

[¶21]   Further, Mr. Richmond has not overcome the "strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment" when counsel advised him not to testify and open himself to cross-examination that could have given the prosecution an opportunity to develop a case for premeditation. *Jendresen*, 2021 WY 82, ¶ 37, 491 P.3d at 284 (quoting *Neidlinger*, 2021 WY 39, ¶ 53, 482 P.3d at 352).

### III.     *Failure to Present a Case*

[¶22]   Mr. Richmond contends the State made a prima facie case against him and, if the State's evidence is not rebutted, a conviction must necessarily follow.  He argues that by resting without offering any rebuttal evidence, his trial counsel "surrendered," and therefore fell below the standard of practice in Wyoming.

[¶23]   Other than himself, Mr. Richmond does not identify any witnesses his trial counsel should have called.  The only specific evidence he claims his counsel failed to present was the coroner's report showing he shot Mr. Birgenheier at "five or six feet," which "proves" Mr. Birgenheier attacked him, and he shot in self-defense.  But that information came out at trial when a firearms expert from the state crime lab testified that the third shot was at a distance greater than five feet, a fact Mr. Richmond's trial counsel emphasized in cross-examination and during closing arguments.

[¶24]   As our analysis in the previous section demonstrates, Mr. Richmond's counsel did present his self-defense theory throughout opening and closing arguments and in cross-examining the State's witnesses.

> The charge that a defendant was denied effective counsel because his attorney did not call witnesses has often been raised.  The decision not to call witnesses is a strategic choice.  In order to successfully show ineffective assistance of counsel, the appellant must present the facts about which the proposed witnesses would have testified.  The decision

whether to call witnesses is normally within the judgment of counsel and will rarely be second-guessed through appellate hindsight.

*Byerly v. State*, 2019 WY 130, ¶ 92, 455 P.3d 232, 255-56 (Wyo. 2019) (cleaned up).

[¶25]  The State presented overwhelming evidence Mr. Richmond acted purposely and maliciously.  Mr. Richmond has shown neither deficient performance nor prejudice from his counsel's failure to call defense witnesses.

## *CONCLUSION*

[¶26]  Mr. Richmond received effective assistance of counsel.  The district court correctly denied his motion for a new trial based on ineffective assistance of counsel. Affirmed.