# SUPREME COURT OF THE UNITED STATES

### TONY TERRELL CLARK *v.* MISSISSIPPI

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF MISSISSIPPI

No. 25–6846.　Decided June 8, 2026

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

Although I agree with the Court's decision to deny certiorari for the reason explained below, I write separately to address the problematic standard the Mississippi Supreme Court applied to the claim petitioner Tony Terrell Clark raised under *Batson* v. *Kentucky,* 476 U. S. 79 (1986), in the context of his ineffective-assistance-of-counsel claim.

During Clark's capital trial, the prosecution struck Black prospective jurors at a rate more than five times that of white jurors. The prosecution also conducted dubious "special investigations into some of the most qualified Black prospective jurors in an attempt to disqualify them," but did not investigate similarly situated white jurors. *Clark* v. *Mississippi*, 600 U. S. ___, ___–___ (2023) (SOTOMAYOR, J. dissenting from denial of certiorari) (slip op., at 5–6). Many of the prosecution's proffered reasons for striking Black jurors, moreover, applied equally to white jurors that it did not strike. For instance, the record "reveal[ed] a double standard where the State struck Black jurors who took anything but the most hardline pro-death penalty position, but not white jurors who expressed serious doubts about the death penalty." *Id.*, at ___ (slip op., at 8).

Despite all this, the Mississippi Supreme Court concluded on direct appeal that the State had not violated *Batson.* In determining that none of the prosecution's strikes were "'motivated in substantial part by discriminatory

intent,'" *Flowers* v. *Mississippi*, 588 U. S. 284, 303 (2019),
the court relied, in part, on the fact that Clark's trial coun-
sel did not present a "'comparative analysis of minority and
non-minority jurors to show disparate treatment'" during
the *Batson* proceedings. *Clark* v. *State,* 343 So. 3d 943, 961–
962 (2022). The court declined to conduct that analysis in
the first instance. *Id.*, at 962.

Clark then filed a habeas petition in state court and ar-
gued that, in the context of the *Batson* proceedings, his trial
counsel was constitutionally ineffective under *Strickland* v.
*Washington*, 466 U. S. 668 (1984). To succeed under *Strick-
land*, a defendant must make two independent showings.
First, that his counsel's performance was deficient, mean-
ing that the counsel's error was "so serious that [he] was
not functioning as the 'counsel' guaranteed the defendant
by the Sixth Amendment." *Id.*, at 687. Second, that the
deficient performance "prejudiced the defense," *ibid.*, mean-
ing that there is "a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different," *id.*, at 694.

The Mississippi Supreme Court held that Clark's ineffec-
tive-assistance claim failed on both grounds. As the court
saw it, Clark did not prove that his "counsel's performance
before the trial court was deficient" or that his "counsel's
performance deprived him of a fair trial with a reliable re-
sult." 418 So. 3d 1226, 1232 (2025). In conducting the prej-
udice analysis, the court relied on *Powers* v. *State*, 371
So. 3d 629 (Miss. 2023), which assessed whether "the out-
come of the trial would have been different" if, but for the
counsel's deficient performance, a properly presented *Bat-
son* challenge had succeeded and the Black jurors had not
been struck. See 371 So. 3d, at 682, 684, 690–691. In other
words, in Mississippi, showing that prejudice resulted from
counsel's ineffective presentation of a *Batson* claim requires
proving not only that the *Batson* claim would have suc-
ceeded, but that this success would have produced a

different substantive outcome at a trial: for example, that a defendant would have been acquitted rather than convicted.

Other courts have taken a different approach. They understand the "prejudice" analysis in this context to require asking only whether the "*Batson* challenge would have been successful" but for the counsel's deficient performance, without further inquiry into whether a hypothetical jury that included jurors who were struck based on their race would have voted differently. See, *e.g.*, *Yazzie* v. *State*, 2021 WY 72, ¶¶21–24, 487 P. 3d 555, 563; see also *Carew* v. *Morton*, 150 F. 4th 150, 171, n. 17 (CA2 2025) (recognizing this conflict and collecting cases). In other words, the relevant "proceeding" for *Strickland* purposes, 466 U. S., at 694, is the *Batson* proceeding, not the trial that follows.*

The Mississippi Supreme Court's approach, to the extent it requires a criminal defendant to show that a competently presented *Batson* challenge would have produced a different trial outcome, is almost certainly wrong.

To start, it misunderstands the nature of a *Batson* error. Generally, constitutional errors do not "'automatically require reversal of a conviction.'" *Weaver* v. *Massachusetts*, 582 U. S. 286, 294 (2017). Instead, a conviction can stand despite most constitutional errors at trial if the government proves beyond a reasonable doubt that a given error was harmless and did not "'contribute to the verdict obtained.'" *Ibid.* "Structural" errors, however, are different. These errors "'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial

———————
*Other courts, in unpublished opinions, have agreed with the Mississippi Supreme Court, requiring defendants raising *Strickland* claims regarding *Batson* errors to prove that a competently presented *Batson* challenge would have succeeded and that this success would have changed the result of trial. See, *e.g.*, *Hutchinson* v. *Superintendent Greene SCI*, 860 Fed. Appx. 246, 249 (CA3 2021); *Parks* v. *Chapman*, 815 Fed. Appx. 937, 943 (CA6 2020).

proceeds,'" which means that their "'consequences . . . are necessarily unquantifiable and indeterminate.'" *United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 148, 150 (2006). Thus, when made, structural errors require "'automatic reversal.'" *Weaver*, 582 U. S., at 299.

When raised as a standalone claim (that is, not as part of an ineffective-assistance claim), *Batson* has always been treated as a structural error not subject to harmless-error analysis. See, *e.g.*, *Weaver*, 582 U. S., at 301 (noting that successful *Batson* claims result in "automatic relief"); *Rivera* v. *Illinois*, 556 U. S. 148, 161 (2009) (characterizing *Batson* as an "automatic reversal preceden[t]"); *Snyder* v. *Louisiana*, 552 U. S. 472, 474 (2008) (reversing conviction based on *Batson* error without assessing harmlessness); cf. *Vasquez* v. *Hillery*, 474 U. S. 254, 263–264 (1986) (holding that racial discrimination in grand jury selection is a structural error). There is no sound basis for treating *Batson* differently in the context of an ineffective-assistance claim.

This Court in *Weaver* v. *Massachusetts* addressed the interplay between *Strickland* prejudice and other structural errors. There, the Court held that a defendant must show *Strickland* prejudice "in the ordinary sense" (meaning a different trial outcome) when one kind of structural error, the violation of the right to a public trial, is raised "via a claim alleging ineffective assistance of counsel." 582 U. S., at 293, 303. The Court clarified, however, that this answer may not hold true for other structural errors, and that "the nature of the error" and "the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." *Id.*, at 294, 302; see *id.*, at 300 (making clear that *Strickland*'s "prejudice inquiry is not meant to be applied in a 'mechanical' fashion").

A *Batson* error is one such error that likely requires a different standard for prejudice. *Weaver*, for example, observed that "not every public-trial violation will in fact lead

to a fundamentally unfair trial." 582 U. S., at 300. The same does not hold true for *Batson* violations, given that "[i]n the eyes of the Constitution, one racially discriminatory peremptory strike is one too many." *Flowers*, 588 U. S., at 298. It is the racial discrimination in jury selection itself, not merely its effect on the outcome of trial, that causes the harms (to defendants, jurors, and the process itself) with which *Batson* is principally concerned. See, *e.g.*, *Powers* v. *Ohio*, 499 U. S. 400, 412–413 (1991).

Yet there is an even clearer reason why the default prejudice standard should not apply here. Asking a defendant to demonstrate a reasonable probability that the jury would not have convicted him had his counsel successfully raised the *Batson* error imposes the burden to persuade courts "of the very conclusion that *Batson* prohibits: that the race of jurors affects their thinking as jurors." *Eagle* v. *Linahan*, 279 F. 3d 926, 943–944, n. 22 (CA11 2001). *Batson* and its progeny are premised on the idea that a person's race (and gender) is simply "'unrelated to his fitness as a juror.'" *Batson*, 476 U. S., at 87; cf. *J. E. B.* v. *Alabama ex rel. T. B.*, 511 U. S. 127, 149 (1994) (O'Connor, J., concurring) ("[T]he import of our holding is that any correlation between a juror's gender and attitudes is irrelevant as a matter of constitutional law"). *Batson*, for example, rejected the idea "that a prosecutor could strike a black juror based on an assumption or belief that the black juror would favor a black defendant." *Flowers*, 588 U. S., at 299. It follows that a defendant cannot make, and courts should not accept, that same argument to prove prejudice. Requiring a defendant to show that a missing, meritorious *Batson* claim would have affected the trial outcome is thus fundamentally inconsistent with *Batson*'s foundational principles.

The Court should one day resolve the conflict outlined above and hold that *Strickland* does not require the kind of prejudice analysis that the Mississippi Supreme Court has adopted for *Batson*-related ineffectiveness claims.

Unfortunately, this case, at least in its current procedural posture, does not present a viable path for doing so. As noted, *Strickland* requires defendants to make two independent showings to succeed (deficiency and prejudice), and the Mississippi Supreme Court concluded that Clark failed to satisfy either one. Before this Court, Clark does not argue that his counsel was so ineffective at trial that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U. S., at 687. Given the independent basis on which Clark's *Strickland* claim failed below, I concur in the denial of Clark's petition for a writ of certiorari.